**Daniel J. Hurteau** (EDNY Bar No. DH7187)
dhurteau@nixonpeabody.com
**NIXON PEABODY LLP**
677 Broadway, 10th Floor
Albany, NY 12207
Phone: 518-427-2650
Fax: 518-427-2666

**Jason P. Gonzalez** (*pro hac vice* pending)
jgonzalez@nixonpeabody.com
**Aaron M. Brian** (*pro hac vice* pending)
abrian@nixonpeabody.com
**NIXON PEABODY LLP**
300 South Grand Avenue, Suite 4100
Los Angeles, CA 90071
Phone:  (213)-629-6000
Fax:  213-629-6001

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANNE RESNIK, SAMUEL HERSCHKOWITZ, M.D., DAVID RESNIK, ELIZABETH RESNIK, MARY PALINSKI, and JANE DOES 1 through 25, <br><br> *Plaintiffs*, <br><br> - *vs* - <br><br> CROCKER COULSON, <br><br> *Defendant*. | **VERIFIED COMPLAINT WITH JURY DEMAND** <br><br> **Civil Action No.: 17-cv-676** |

Anne Resnik, Samuel Herschkowitz, M.D., David Resnik, Elizabeth Resnik, Mary

Palinski and Jane Does 1 through 25 by and through their attorneys NIXON PEABODY

LLP, for their Verified Complaint against Crocker Coulson ("Coulson") allege as

follows:

1

**Introduction**

**Coulson Hacks His Wife's iPhone and Installs Spyware: mSpy and OwnSpy**

1.     The allegations in this Complaint are primarily derived from the attached **(Exhibits A and B)** redacted Decisions and Orders of Justice Jeffery S. Sunshine, Supreme Court, Kings County, New York State.  *Crocker C. v. Anne R*., 49 Misc.3d 1202(A) (Kings County, September 18, 2015); *Crocker C. v. Anne R*., 53 Misc.3d 1202(A) (Kings County, September 19, 2016).

2.     According to his own bank records and credit card statements, Coulson purchased spyware (called mSpy) on October 2, 2014.

3.     On October 6, 2014, in the dead of night, Coulson illegally hacked ("jail broke") his wife's iPhone.

4.     He then installed and activated  spyware (mSpy) on his wife's iPhone to, among other things, access her e-mails, text messages, photographs, videos, calendar entries, GPS location, call logs, contact information and other private, confidential and privileged communications and information.

5.     Coulson also installed and activated separate spyware (called OwnSpy) on October 10, 2014 on his wife's iPhone so he could, among other things, illegally wiretap his wife's phone to surreptitiously intercept, listen to and record her live telephone conversations and eavesdrop on in-person consultations, including her attorneys and psychiatrist.

6.     Coulson used this spyware, in combination with GPS tracking on his wife's iPhone, to intercept, track, target and listen to conversations between his wife and her mother, brother, sister, attorneys and psychiatrist.

7.     After installing and activating the spywares and one day after his wife met with and consulted with her attorney, Coulson filed an action for divorce.

8.     Coulson's conduct is indisputably illegal.

9.     In a criminal prosecution, Coulson's hacking and wiretapping is punishable by as much as ten years under the Computer Fraud and Abuse Act, and five years under the Electronic Communications Privacy Act.

10.     Obviously aware of the criminal implications of his conduct once his wife's attorney had proof that he purchased the spyware, Coulson invoked the Fifth Amendment's protection against self-incrimination and refused to answer over one hundred questions regarding his purchase and use of spyware to illegally spy on his wife at his deposition in the divorce action.

11.      In this action, the Plaintiffs seek substantial civil damages for Coulson's flagrant illegal conduct.

**Jurisdiction**

12.     Jurisdiction of this court arises under 28 U.S.C. §1331.

13.     Jurisdiction of this court for the pendent state claims is authorized by 28 U.S.C. §1367, and arises under the doctrine of pendent jurisdiction as set forth in United Mine Workers v. Gibbs, 383 U.S. 715 (1966).

**Venue**

14.     Plaintiffs understand that Coulson resides at Brooklyn, New York, making

Coulson subject to this court's jurisdiction and venue proper pursuant to 28 U.S.C.

§1391.

15.     Venue also is proper in this District because a substantial part of the events

giving rise to these claims occurred here.

**Parties**

16.     Plaintiff Anne Resnik is Coulson's estranged wife.

17.     Prior to their divorce proceeding, Anne Resnik, Coulson, and their two

children resided in Brooklyn, New York.

18.     After Anne Resnik's separation from Coulson, she moved but currently still

resides in Brooklyn, New York 11201.

19.     Upon information and belief, Coulson has continued to reside in Brooklyn,

New York.

20.     Plaintiff Dr. Samuel Herschkowitz at all relevant times was Anne Resnik's

psychiatrist.

21.     Dr. Herschkowitz maintains a professional office in Brooklyn, New York

11201.

22.     On information and belief, Dr. Herschkowitz was present at his office on at

least one occasion when Coulson intercepted and listened to a confidential and privileged

conversation between Dr. Herschkowitz (her psychiatrist) and Anne Resnik (his patient).

23.     Plaintiff David Resnik is Anne Resnik's brother.

4

24.     David Resnik is a resident of West Hollywood, California.

25.     On information and belief, David Resnik was located in California on at least one occasion when Coulson intercepted and listened to a conversation between him and Anne Resnik.

26.     Plaintiff Elizabeth Resnik is Anne Resnik's mother.

27.     Elizabeth Resnik is a resident of Green Valley, Arizona.

28.     On information and belief, Elizabeth Resnik was located in Arizona on at least one occasion when Coulson intercepted and listened to a conversation between her and Anne Resnik.

29.     Plaintiff Mary Palinski is Anne Resnik's sister.

30.     Mary Palinski is a resident of Cary, North Carolina.

31.     On information and belief, Mary Palinski was located in North Carolina on at least one occasion when Coulson intercepted and listened to a conversation between her and Anne Resnik.

32.     As a result of Coulson's invocation of the Fifth Amendment and refusal to answer questions about his use of the spyware, Plaintiffs are not aware of all facts regarding the volume of the data he stole, the number of communications he illegally intercepted, or the identities of other individuals whose communications Coulson may have intercepted.

33.     Upon completion of the forensic analysis of Anne Resnik's iPhone and Coulson's electronic devices, additional plaintiffs whose conversations were targeted and otherwise intercepted or recorded may be added.

5

34.     Moreover, additional details about specific interceptions relating to the
named plaintiffs herein will also be added as further information is developed.

**Facts and Circumstances**

35.     At all relevant times, Anne Resnik was the owner of a password protected
Apple iPhone smart phone.

36.     Coulson was never an authorized user of Anne Resnik's iPhone.

37.     As early as March 2013 and as recently as October 2014, Coulson
purchased and installed spyware programs on Anne Resnik's iPhone.

38.     The spyware applications Coulson installed are commonly referred to as
"cyber stalking apps."   (Danielle Keats Citron, Spying Inc., 72 Wash. & Lee L. Rev.
1243 (2015)).

39.     These spyware programs provide the attacker the ability to conduct stealth
surveillance.

40.     More specifically, the spyware Coulson installed allowed Coulson to
illegally:

> a.  Intercept, eavesdrop and record electronic communications Anne
>     Resnik made using her iPhone;
>
> b.  Track Anne Resnik's whereabouts remotely by monitoring the iPhone's
>     GPS;
>
> c.  Remotely turned the iPhone into an open microphone allowing him to
>     intercept and record Anne Resnick's private conversations;

d.  To observe, monitor and download Anne Resnik's call history, website history, keystrokes, calendar, notes, tasks photographs, videos, and contact lists; and

e.  Target certain people and listen to conversations between the targeted individuals and Anne Resnik.

**Forensic Analysis Reveals Coulson's Illegal Jail-Break and Installation of Spyware Program on Anne Resnik's iPhone**

41.     During the course of the divorce proceeding, Anne Resnik retained computer forensics firm Cyber Diligence, Inc. ("CDI") to conduct a forensic analysis of her iPhone.

42.     CDI began this analysis on or after February 6, 2015, and found that Anne Resnik's iPhone had been "jail-broken."

43.     A "jail broken" phone is a phone that has had its built-in security system bypassed and disabled.

44.     With respect to iPhones in particular, Apple's iPhone operating system (IOS) is designed to prevent malicious software (spyware) installation.

45.     The IOS is locked-down so that only software Apple has approved can be installed on the iPhone.

46.     These security measures can be bypassed and disabled using specialized software; the act of bypassing and disabling Apple's security is called "jail-breaking."

47.     Unless the iPhone is "jail-broken" no unauthorized software can be installed.

48.     CDI's analysis discovered that Anne Resnik's iPhone was jail-broken using "Pangu," a very popular jail-breaking tool.

49.     Prior to CDI's analysis, Anne Resnik did not know what the term "jail-breaking" meant and had no reason to suspect that her iPhone had been jail-broken.

50.     CDI's forensic analysis of Anne Resnik's iPhone showed that on October 6, 2014, at approximately 1:32 a.m., the Pangu program was executed on her iPhone.

51.     The analysis also showed that approximately 14 minutes later, at 1:46 a.m., the hidden monitoring spyware mSpy was installed on the iPhone.

52.     The jail-breaking and installing of spyware took place while Anne Resnik and Coulson were still living together, with their two young children, approximately three weeks before Coulson initiated divorce proceedings against Anne Resnik.

53.     In fact, the divorce action was filed the day after Anne Resnik met with her attorney and psychiatrist, where they had private, confidential and privileged consultations that appear to have been intercepted by Coulson.

**Coulson's Use of mSpy Spyware**

54.     mSpy is a hidden monitoring program.

55.     Once installed on a target iPhone, mSpy enables the attacker to discreetly and surreptitiously track the usage of another person's cellular telephone.

56.     Among other things, mSpy enables the attacker to intercept the target's text messages and email communications.

57.     It also enables the attacker to monitor the phone call history, contact list, website history, calendar, notes, tasks, photographs, videos and GPS location(s).

58.     mSpy also has ability to record keystrokes and capture passwords.

59.     Even if mSpy is eventually uninstalled, the attacker can continue to use passwords learned through the hacking to access the victim's confidential and private information.

60.     mSpy also captures and stores data from the target device.

61.     This allows an attacker to remotely access and monitor the Victim's data from the attacker's computing devices.

62.     This access and monitoring is provided through the attacker's personal online account set up through the spyware's portal on the spyware's website.

63.     mSpy is clandestine and runs in a discreet operating mode without slowing the device down.

64.     mSpy does not create distractions for the person using the device because it does not result in any pop-ups, alerts, or notifications.

65.     While mSpy is running, the targeted victim – here, Anne Resnik – is unaware that her iPhone has been compromised and that her communications, whereabouts, and other personal data and being monitored, intercepted and/or recorded.

**Further Forensic Analysis Uncovers Coulson's Use of OwnSpy Spyware**

66.     In March  2016, CDI performed a further and more detailed analysis of Anne Resnik's iPhone.

67.     In this analysis, CDI discovered that, in addition to mSpy, another spyware application called "OwnSpy" had been installed on Anne Resnik's phone.

68.     The analysis revealed that OwnSpy likely was installed on her phone on October 10, 2014, and uninstalled on October 31, 2014.

69.     OwnSpy shares many capabilities with mSpy, but also has a wiretapping feature that allows the attacker to intercept and record telephone calls.

70.     OwnSpy also can turn a compromised iPhone into open microphone allowing the attacker to remotely eavesdrop on and record conversations taking place near the victim's phone.

71.     As part of its operation, OwnSpy creates log files of its activity in the victim's phone.

72.     The log files contain, among other things: configuration information; certain features of the spyware that are being activated; telephone conversations being intercepted, recorded and uploaded to the OwnSpy server; and captured GPS data.

73.     On information and belief, Coulson activated the Live Audio (Audio Spy) feature on numerous occasions, turning her phone into an open microphone and allowing him to illegally and surreptitiously eavesdrop on and record Anne Resnik's private conversations.  For example:

    a.  GPS data from Anne Resnik's iPhone shows that on October 27, 2014, she arrived at the office of her psychiatrist, Dr. Herschkowitz.

    b.  While there, Coulson activated the Live Audio feature, turning the iPhone into an open microphone and allowing him to intercept and record Anne Resnik's private, confidential and privileged conversations, including those with her psychiatrist Dr. Herschkowitz.

10

  c. Later on October 27, 2014, when the GPS data showed that Anne Resnik had just arrived at her attorney's office, Coulson once again activated the OwnSpy Live Audio feature, allowing Coulson to intercept and record Anne Resnik's private, confidential and privileged conversations with her attorney.

74. On information and belief, Coulson activated OwnSpy's call recording feature and successfully wiretapped targeted phone conversations made on his wife's iPhone on numerous occasions.

75. During the time that Coulson's installation of OwnSpy was active on Anne Resnik's iPhone (October 10, 2014 to October 31, 2014), Anne Resnik had detailed and personal, confidential and privileged conversations with her attorneys, her psychiatrist, and members of her family, her family's attorneys, and her family's financial advisors.

76. Coulson's installation of OwnSpy onto the iPhone thus gave him the ability to intercept, record, and download these private, confidential and privileged conversations with Anne Resnik's attorneys, physicians, her family and their attorneys, financial advisors, and anyone else that Anne Resnik spoke with either by using her iPhone or in the presence of her iPhone.

77. During this time period, and using the mSpy and OwnSpy technology described above, Coulson also illegally intercepted, wiretapped and/or eavesdropped on separate private, confidential and privileged communications that Anne Resnik had with her psychiatrist Dr. Herschkowitz, her brother David Resnik, her mother Elizabeth Resnik, and her sister Mary Palinski.

78.     Each participant to the intercepted communications had a reasonable expectation of privacy with respect to those communications, and suffered damage as a result of Coulson's eavesdropping and wiretapping activity.

79.     The evidence showing Coulson installed, or at a minimum arranged to have installed, the OwnSpy application is damning.

80.     Among other things: on or about October 7 and 15, 2014, shortly after Anne Resnik's iPhone was jail-broken and the spyware programs were installed, Coulson made payment of $64 to Mobile Innovations SL, the company selling OwnSpy.

81.     At the time, $64 was the approximate price for a 30 day license of OwnSpy.

82.     On information and belief, the spyware installed on her phone was registered to a customer using Coulson's Gmail account and cell phone number.

83.     Coulson did undertake, albeit unsuccessful, to cover his tracks.

84.     Coulson also purchased, installed, and used a product called IPVanish.

85.     IPVanish is a Virtual Private Network that is designed to prevent its users from being traced.

86.     It essentially masks the IP address of the user, so that the user's activity cannot be easily traced back to him or her.

87.     On information and belief, Coulson attempted to use IPVanish to mask his surreptitious access into Anne Resnik's iPhone and his illegal wiretapping, eavesdropping, and intercepting of communications to and from Anne Resnik's iPhone.

88.     At no time did Coulson notify Anne Resnik that he had installed mSpy, OwnSpy, or any other spyware program, on her iPhone.

12

89.     Nor was Anne Resnik otherwise made aware or notified that mSpy, OwnSpy, or any other spyware program had been installed, that her communications were being monitored, or that her privacy was being violated.

90.     Anne Resnik never authorized Coulson to access her iPhone in this matter, or to monitor, record, or otherwise access in any way her private communications:

    a.  Coulson's access to Anne Resnik's password-protected iPhone was done entirely without her knowledge, permission or authorization.

    b.  Coulson's installation of mSpy and OwnSpy onto Anne Resnik's iPhone was done without her knowledge, permission or authorization.

    c.  Coulson's monitoring, intercepting, recording and downloading of electronic communications, room conversations, GPS tracking information, texts/SMS/IM chat messages, email messages, calendar items, contracts, documents, live conversations, and other information surreptitiously taken from Anne Resnik's iPhone was done without her knowledge, permission, or authorization, and without the knowledge, permission, or authorization of any of the Plaintiffs in this action.

91.     Anne Resnik's iPhone was, at all times relevant hereto, connected to the Internet, and was utilized in interstate commerce.

92.     Coulson, while using the spyware programs to intercept, record and download Anne Resnik's electronic communications and other personal information from her iPhone, then accessed, intercepted, monitored or otherwise observed and then recorded, without authorization and/or in excess of authorization, an unknown number of

electronic communications, telephone calls, room conversations and personal information stored or maintained on Anne Resnik's iPhone.

93.    Coulson then, after accessing Anne Resnik's iPhone, transmitted (downloaded) each and every electronically stored file, identified above, one by one, from the website portal to his personal computer, electronically, utilizing the Internet.

94.    Coulson accessed, trespassed upon, obtained, stole, and converted a substantial but as yet undetermined amount of electronic files belonging to Anne Resnik, including but not limited to private, confidential and privileged communications with her attorneys and psychiatrist.

95.    The Court in the divorce proceedings ordered further forensic analysis of the parties' computing or electronic devices.

96.    The parties and the State Court are awaiting the result of this analysis.

97.    Plaintiffs anticipate that the analysis will reveal additional and more specific information regarding Coulson's illegal access to and monitoring of Anne Resnik's iPhone, and illegal access to Plaintiffs' private, confidential and privileged communications.

98.    Plaintiffs also believe the analysis is likely to identify numerous additional individuals whose communications were intercepted by Coulson and who may have damage claims similar to those asserted herein.

99.    Upon completion of the forensic analysis, Plaintiffs intend to amend and/or supplement this pleading with any further detail regarding Coulson's illegal surveillance.

100.    Thus, this action arises out of Coulson's actions to:

a.  Unlawfully access and "jail-break" Anne Resnik's iPhone in order to install spyware software on her iPhone:

b.  Unlawfully intercept and record personal, privileged and/or confidential electronic communications including email, telephone calls and text messages, and including private communications between Anne Resnik and her attorneys, psychiatrist, family members, and others;

c.  Unlawfully track Anne Resnik's whereabouts by monitoring the targeted iPhone's GPS information;

d.  Unlawfully turn Anne Resnik's iPhone into an open microphone to allow Coulson to intercept and record live room conversations taking place in proximity to the victim's iPhone, including conversations between Anne Resnik and her attorneys and Anne Resnik and her psychiatrist;

e.  Unlawfully eavesdrop on and record telephone calls made to or from Anne Resnik's iPhone, including calls between her and her brother (David Resnik), her mother (Elizabeth Resnik), and her sister (Mary Palinski);

f.  Unlawfully monitor keystrokes on Anne Resnik's iPhone thus revealing passwords, passcodes and other security measures; and

g.  Unlawfully obtain and download personal information including electronic communications, photographs, videos, calendar entries, notes,

tasks, contact lists and other data stored and maintained on Anne

Resnik's password protected iPhone;

h.  Unlawfully trespass upon Anne Resnik's property;

i.  Unlawfully convert Anne Resnik's property; and

j.  Unlawfully circumvent a technological measure that controls access to

Anne Resnik's iPhone and the personal and confidential information

contained thereon.

101.  Plaintiffs bring the following causes of action:

a.  Violation of the Computer Fraud and Abuse Act ("CFAA"), a criminal

statute with a civil cause of action, 18 U.S.C. §1030;

b.  Violation of the Electronic Communications Privacy Act ("Wiretap

Act"), a criminal statute with a civil cause of action, 18 U.S.C. §§ 2510

et seq;

c.  New York State common law trespass to chattels; and

d.  New York State common law civil conversion.

e.  California common law invasion of privacy; and

f.  Violation of California's Invasion of Privacy Act, a criminal statute with

a civil cause of action, Cal. Penal Code §630 et seq

g.  Arizona common law invasion of privacy.

h.  Violation of North Carolina's Electronic Surveillance Act, a criminal

statute with a civil cause of action, N.C.G.S.A. § 15A-287; and

i.  North Carolina common law intrusion upon privacy.

102.    Plaintiffs seek damages, including actual damages, statutory damages, and punitive damages; attorneys' fees and litigation costs; and a declaratory judgment that the law has been violated by Coulson as set forth herein.

103.    These damages include, but are not limited to: (a) all costs associated with the computer forensic work done to discover, analyze, and attempt to remediate Coulson's improper and illegal activity, as described above; (b) the attorney's fees associated with Plaintiffs' efforts to discover, analyze, and attempt to remediate Coulson's improper and illegal activity, including all but not limited to all such fees incurred in the divorce and custody proceedings, as described above; (c) all costs related to Plaintiffs' need to repair and/or replace devices compromised by Coulson's improper and illegal activity; (c) all costs related to replacing and/or recreating data corrupted, damaged, and/or deleted by Coulson's improper and illegal activity; (d) great mental anguish, anxiety, agitation, humiliation, embarrassment, pain and suffering stemming from Coulson's wanton and despicable intrusion into Plaintiffs' personal and confidential affairs.

104.    Plaintiffs further seek all applicable statutory damages and attorneys' fees, as well as injunctive relief to immediately deactivate and remove any spyware software programs Coulson has installed on Anne Resnik's iPhone or other electronic communication devices, and to require Coulson to immediately surrender all electronic devices he had ownership or possession of during the time that he surreptitiously and illegally accessed Anne Resnik's iPhone.

## Count 1

## Violation of Computer Fraud and Abuse Act

105.    Anne Resnik repeats and incorporates by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

106.    Anne Resnik asserts this Count against Coulson pursuant to the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030.

107.    Anne Resnik's iPhone is a "protected computer" pursuant to Section 1030(e)(2) of the CFAA.

108.    Coulson intentionally accessed Anne Resnik's iPhone without authorization or exceeded authorized access to Anne Resnik's iPhone, and thereby obtained information from the iPhone, in violation of 18 U.S.C. §1030(a)(2).

109.    Coulson intentionally caused the transmission of a program, information, code or command to Anne Resnik's iPhone, and as a result intentionally caused damage to Anne Resnik's iPhone without authorization, in violation of 18 U.S.C. §1030(a)(5)(A).

110.    Coulson intentionally accessed Anne Resnik's iPhone without authorization, and as a result recklessly caused damage to Anne Resnik's iPhone, in violation of 18 U.S.C. §1030(a)(5)(B).

111.    Coulson intentionally accessed Anne Resnik's iPhone computer without authorization, and as a result of such conduct, caused damage and loss in an amount to be determined at trial, but no less than $400,000.00, in violation of 18 U.S.C. §1030(a)(5)(C).

112.    The spyware that Coulson used to hack Anne Resnik's iPhone captured data including communications, files, and other materials from Anne Resnik's iPhone.

113.    Coulson then used his computer to remotely access and monitor all of the captured data, accessing that data through his personal online account set up through the spyware's portal on the spyware company's website.

114.    Each of the electronic devices that Coulson used is a "computer" as that term is used in 18 U.S.C. §1030(d)(1).

115.    18 U.S.C. §1030, which is a criminal statute, also subjects perpetrators to civil liability.  Section 1030(4)((g) states:

116.    Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief.  A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i).  Damages for a violation involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages.  No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage.  No action may be brought under this subsection for the negligent design or manufacture of computer hardware, computer software, or firmware.

117.    Anne Resnik was not aware of Coulson's intentional and unauthorized access of her iPhone until February 6, 2015, at the earliest.

118.    Anne Resnik has suffered losses greater than $400,000.00 in responding to the offenses committed by Coulson, including the cost assessing damage to her iPhone, the cost of responding to the unauthorized access and hacking (cost of forensic analysis) as well as additional legal and court fees incurred in the divorce proceeding that resulted directly from the revelation of Coulson's unauthorized access and hacking to Anne Resnik's iPhone.  18 U.S.C. § 1830(c)(4)(A)(i)(I).

119.    Coulson's use of the spyware to unlawfully access Anne Resnik's iPhone gave him access to information concerning Anne Resnik's medical treatment including her communications with her psychiatrist, and that has impaired her examination, diagnosis, treatment and/or care, in violation of 18 U.S.C. § 1830(c)(4)(A)(i)(II).

120.    As a result, Anne Resnik has suffered great mental anguish, anxiety, agitation, humiliation, embarrassment, pain and suffering in an amount to be determined at trial.

121.    The damage and injuries to Anne Resnik occurred in New York City.

122.    Both Anne Resnik and Coulson are "person(s)" as that term is used in 18 U.S.C. §1030(d)(12).

123.    Coulson's actions were conscious, intentional, wanton, malicious, and criminal, entitling Anne Resnik to an award of punitive damages.

124.    Anne Resnik has been damaged as a proximate result of Coulson's despicable acts and wanton breach of trust.

20

**Count 2**

**Electronic Communications Privacy Act**

125.    Plaintiffs repeat and incorporate by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

126.    Plaintiffs assert this Count against Coulson pursuant to the Electronic Communications Privacy Act ("Wiretap Act"), 18 U.S.C. § 2510 et seq.

127.    Through his activation and use of the spyware, Coulson intentionally intercepted or endeavored to intercept oral and electronic communications transmitted to from or in the proximity of Anne Resnik's iPhone, including communications that Anne Resnik had, separately, with Dr. Herschkowitz, David Resnik, Elizabeth Resnik and Mary Palinski.

128.    On information and belief, Coulson disclosed or endeavored to disclose the content of the oral or electronic communication that he unlawfully intercepted, wiretapped, eavesdropped or otherwise obtained through the spyware that he installed on Anne Resnik's iPhone.

129.    On information and belief, Coulson used or endeavored to use the content of the oral or electronic communication that he unlawfully intercepted, wiretapped, eavesdropped or otherwise obtained through the spyware that he installed on Anne Resnik's iPhone.

130.    Coulson's conduct was a violation of the Wiretap Act.

131.    Section 2520 of the Wiretap Act provides for civil liability.

132.    It states in relevant parts that:

a.  In general. … any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

b.  Relief.--In an action under this section, appropriate relief includes--

   (i)    such preliminary and other equitable or declaratory relief as may be appropriate;

   (ii)   damages under subsection (c) and punitive damages in appropriate cases; and

   (iii)  a reasonable attorney's fee and other litigation costs reasonably incurred.

c.  Computation of damages.—

   (i)    In any other action under this section, the court may assess as damages whichever is the greater of--

          (a) the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation; or

          (b) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.

133.   Plaintiffs are entitled to recover their damages, in an amount to be determined, resulting from Coulson's intentional interception, use and/or disclosure of communications.

22

134.    Plaintiffs are each entitled to statutory damages of $100 per day for each day that Coulson violated the Wiretap Act or $10,000, whichever is greater.

135.    Plaintiffs are each entitled to punitive damages, in an amount to be determined, for Coulson's egregious, malicious and oppressive use of the spyware software to intentionally and specifically intercept, monitor and/or record, among other things, communications between Anne Resnik and her attorneys, psychiatrist, brother, mother and sister.

136.    Plaintiffs are entitled to recovery of their attorney fees and costs of this litigation.

137.    Plaintiffs are entitled to a preliminary injunction requiring the surrender of Coulson's electronic devices that were used, or could have been used, to access the information, data and communications that were being intercepted, recorded or otherwise captured by the spyware he installed on Anne Resnik's iPhone.

138.    Coulson's electronic devices must be surrendered so as to ensure that all information, data and communications that were intercepted, recorded or otherwise captured by the spyware software programs he installed on intercepted, wiretapped, eavesdropped or otherwise obtained through the spyware that he installed on Anne Resnik's iPhone has been destroyed.

139.    Plaintiffs are entitled to a declaration that Coulson's actions alleged herein violated the Wiretap Act.

## Count 3

### Trespass to Chattels

140.   Anne Resnik repeats and incorporates by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

141.   In New York, the elements of a claim for trespass to chattels are:

    a.  Defendant intentionally and without justification or consent, physically interfered with the use and enjoyment of personal property in the plaintiff's possession; and

    b.  the plaintiff was harmed thereby.

142.   Coulson without justification and without Anne Resnik's consent interfered with the use of Anne Resnik's iPhone and all the data and information stored thereon.

143.   Anne Resnik was damaged as a proximate result of Coulson's trespass by virtue of the jail-breaking and spyware that were installed on her iPhone and because a substantial but as-of-yet undetermined number of electronic files were copied, captured or otherwise taken from Anne Resnik's iPhone, without her knowledge or consent, and thereby, Anne Resnik has been deprived of the same.

144.   Coulson's actions were conscious, intentional, wanton, malicious and criminal, entitling Anne Resnik to an award of punitive damages.

## Count 4

### Civil Conversion

145.   Anne Resnik repeats and incorporates by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

146.   In New York, the elements of a claim for civil conversion are:

    a.   the willful interference with property;

    b.   without lawful justification; and

    c.   whereby a person entitled to possession of the property is deprived of the possession of it.

147.   Coulson willfully interfered with the use of Anne Resnik's iPhone, and willfully interfered with Anne Resnik's electronic files, data and other information stored on Anne Resnik's iPhone.

148.   Coulson's willful interference was without lawful justification.

149.   In doing so, Coulson deprived Anne Resnik of possession of a substantial but as-of-yet undetermined number of her electronic files.

150.   Anne Resnik has been damaged thereby.

151.   Coulson's actions complained of, herein, were conscious, intentional, wanton, malicious and criminal, entitling Anne Resnik to an award of punitive damages.

## Count 5
## Invasion of Privacy

152.   David Resnik repeats and incorporates by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

153.   In California, where David Resnik resides and where he was located when at least one of his communications with Anne Resnik was eavesdropped, the elements of a common law invasion of privacy are:

    a.   a legally protected privacy interest;

25

b.   a reasonable expectation of privacy in the circumstances; and

c.   conduct by defendant constituting a serious invasion of privacy.

154.   David Resnik has a legally protected privacy interest in his personal and confidential telephone, in-person and electronic communications with his sister, Anne Resnik.  See, e.g., California Invasion of Privacy Act, Cal. Penal Code § 630 et seq.

155.   David Resnik reasonably expected that his communications with his sister would be private.

156.   Coulson's installation and activation of spyware to wiretap and/or eavesdrop on communications between David Resnik and his sister was a serious invasion of his privacy.

157.   As a result of Coulson's intentional violation of David Resnik's privacy, Mr. Resnik suffered great mental anguish and suffered damages in an amount to be determined at trial.

## Count 6

## Violation of the California Invasion of Privacy Act

158.   David Resnik repeats and incorporates, herein, by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

159.   Section 631 of the California Invasion of Privacy Act ("CIPA") makes it a violation for any:

160.   "person who, by means of any machine, instrument, or contrivance, or in any other manner, intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or

telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state[.]"  Cal. Penal Code § 631(a).

161.   Section 632 of the CIPA makes it a violation for any:

162.   "person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio[.]"  Cal. Penal Code §632(a).

163.   Section 632.7 of the CIPA makes it a violation for any:

164.   "person who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone[.]"  Cal. Penal Code § 632.7.

165.   Section 637.2 of the CIPA includes a right for the victim of any conduct described in the paragraphs above to bring a civil action against the perpetrator:

    a. Any person who has been injured by a violation of this chapter may

       bring an action against the person who committed the violation for the

       greater of the following amounts:

       i. Five thousand dollars ($5,000) per violation

       ii. Three times the amount of actual damages, if any, sustained by the

         plaintiff.

166. Coulson used the spyware he installed on Anne Resnik's to target, intercept and record telephone calls between Anne Resnik and David Resnik.

167. David Resnik was injured as a result of Coulson's actions, described above, which violated sections 631, 632 and/or 632.7 of the CIPA.

168. David Resnik is entitled to damages of no less than $5,000 per violation, to be determined after all evidence of Coulson's conduct has been analyzed, or three times his actual damages, in an amount to be determined at trial.

## Count 7

### Invasion of Privacy Act

169. Elizabeth Resnik repeats and incorporates by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

170. In Arizona, where Elizabeth Resnik resides and where she was located when at least one of her communications with Anne Resnik was eavesdropped, wiretapped or otherwise intercepted by Coulson, a person is liable for invasion of privacy if that person:

a. Intentionally intercepts a wire or electronic communication to which he is not a party, or aids, authorizes, employs, procures or permits another to so do, without the consent of either a sender or receiver thereof; or

b. Intentionally intercepts a conversation or discussion at which he is not present, or aids, authorizes, employs, procures or permits another to so do, without the consent of a party to such conversation or discussion. See A.R.S. § 13-3005.

171.   Coulson used the spyware he installed on Anne Resnik's iPhone to target, intercept and record telephone calls between Anne Resnik and Elizabeth Resnik.

172.   Elizabeth Resnik's reasonable expectation of privacy was violated by Coulson's conduct.

173.   Elizabeth Resnik was injured as a result of Coulson's invasion of her privacy rights resulting from his interception of telephone calls in which Elizabeth Resnik was a party.

174.   Elizabeth Resnik is entitled to recover damages, including her mental anguish and anxiety, resulting from Coulson's wrongful conduct, described above.

## Count 8

### Violation of North Carolina Electronic Surveillance Act

175.   Mary Palinski repeats and incorporates by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

176.   In North Carolina, where Mary Palinski resides and where she was located when at least one of her communications with Anne Resnik was eavesdropped,

wiretapped or otherwise intercepted by Coulson, a person is liable for violation of North Carolina's Electronic Surveillance Act if that person, among other things:

    a. Willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication.

    b. Willfully uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when:

        i. The device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communications; or

        ii. The device transmits communications by radio, or interferes with the transmission of such communications.

See, N.C.G.S.A § 15A-287

    177. Pursuant to N.C.G.S.A § 15A-296, a victim of such conduct is entitled to civil damages from the perpetrator:

    a. Any person whose wire, oral, or electronic communication is intercepted, disclosed, or used in violation of this Article, has a civil cause of action against any person who intercepts, discloses, uses, or procures any other person to intercept, disclose, or use such communications, and is entitled to recover from any other person:

     i.     Actual damages, but not less than liquidated damages, computed at the rate of one hundred dollars ($100.00) a day for each day of violation or one thousand dollars ($1,000), whichever is higher;

     ii.    Punitive damages; and

    iii.   A reasonable attorneys' fee and other litigation costs reasonably incurred.

178.    Coulson used the spyware he installed on Anne Resnik's iPhone to target, intercept and record telephone calls between Anne Resnik and Mary Palinski.

179.    Mary Palinksi is entitled to recover her actual damages, in an amount to be determined at trial, or $1,000, whichever is greater, from Coulson.

180.    Mary Palinksi is entitled to recover punitive damages from Coulson for his willful, malicious and unlawful conduct.

181.    Mary Palinksi is entitled to recover her reasonable attorneys' fees and other litigation costs.

**Count 9**

**Intrusion On Privacy**

182.    Mary Palinski repeats and incorporates by reference the allegations in the preceding paragraphs of this Complaint, as if set forth fully herein.

183.    Coulson's interception, eavesdropping and/or wiretapping of communications between Mary Palinski and Anne Resnik was an intrusion upon her privacy.

184.    As a result of Coulson's conduct, Mary Palinski was injured and suffered damages including mental anguish and anxiety.

185.    Mary Palinski is entitled to recover general damages, in an amount to be determined at trial.

186.    Mary Palinski is also entitled to recover punitive damages from Coulson for his willful, intentional and malicious conduct.

## Prayer for Relief

**WHEREFORE**, Plaintiffs demands judgment as follows:

- On **Count 1**, Anne Resnik demands judgment against Coulson for actual, general, special, and compensatory damages, in the amount to be shown at trial, and further demands judgment against Coulson for punitive damages, in an amount to be determined at trial, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate;

- On **Count 2**, all Plaintiffs demand judgment against Coulson for actual, general, special, and compensatory damages, in the amount to be shown at trial, for statutory damages, and further demands judgment against Coulson for punitive damages, in an amount to be determined at trial, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate;

- On **Count 3**, Anne Resnik demands judgment against Coulson for actual, general, special, and compensatory damages, in an amount to be determined at trial, and further demands judgment against Coulson for punitive damages, in an

32

amount to be determined at trial, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate;

- On **Count 4**, Anne Resnik demands judgment against Coulson for actual, general, special, and compensatory damages, in the amount to be shown at trial, and further demands judgment against Coulson for punitive damages, in an amount to be determined at trial, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate;

- On **Count 5**, David Resnik demands judgment against Coulson for actual, general, special, and compensatory damages, in the amount to be shown at trial, and further demands judgment against Coulson for punitive damages, in an amount to be determined at trial, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate;

- On **Count 6**, David Resnik demands judgment against Coulson for actual, general, special, and compensatory damages, in the amount to be shown at trial, and further demands judgment against Coulson for punitive damages, in an amount to be determined at trial, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate;

- On **Count 7**, Elizabeth Resnik demands judgment against Coulson for actual, general, special, and compensatory damages, in the amount to be shown at trial, and further demands judgment against Coulson for punitive damages, in an amount to be determined at trial, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate;

33

- On **Count 8**, Mary Palinski demands judgment against Coulson for actual, general, special, and compensatory damages, in the amount to be shown at trial, and further demands judgment against Coulson for punitive damages, in an amount to be determined at trial, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate;

- On **Count 9**, Mary Palinski demands judgment against Coulson for actual, general, special, and compensatory damages, in the amount to be shown at trial, and further demands judgment against Coulson for punitive damages, in an amount to be determined at trial, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate;

- Lawful interest on all of the monies due Plaintiffs;

- Preliminary injunction requiring Coulson to surrender all electronic devices that he used, or could have used, to access the data captured by the spyware software programs he installed on Anne Resnik's iPhone, as alleged herein;

- Declaring that the law has been violated, as alleged herein; and

- Grant such other and further relief as the court deems just and proper.

**Jury Demand**

Plaintiffs demand trial by jury of all issues so triable.


Dated: February 6, 2017

<div style="margin-left:40%">

NIXON PEABODY LLP

By: _____

Daniel J. Hurteau
Jason P. Gonzalez (*pro hac vice* pending)
Aaron M. Brian (*pro hac vice* pending)

677 Broadway, 10th Floor
Albany, New York 12207
(518) 427-2650
dhurteau@nixonpeabody.com

*Attorneys for Plaintiffs*
*Anne Resnik, Samuel Herschkowitz, MD, David*
*Resnik, Elizabeth Resnik and Mary Palinski*

</div>

## VERIFICATION

STATE OF NEW YORK  )
                   ) ss.:
COUNTY OF NEW YORK )

    ANN RESNIK, being duly sworn, deposes and says:

    I am one of the named plaintiffs in the within action, and I am united in interest

and plead together with all plaintiffs.  I have read the within Complaint and know the

contents thereof, and the same is true to the best of my knowledge, information and

belief.

<div style="text-align:right">_____<br>ANN RESNIK</div>

Sworn to before me this
6th day of February, 2017

_____
Notary Public

       **BRENDAN SMITH**
NOTARY PUBLIC-STATE OF NEW YORK
      No. 01SM6262755
    Qualified in New York County
My Commission Expires May 29, 2016
             2020