UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
ANNE RESNIK, SAMUEL
HERSCHKOWITZ, M.D., ELIZABETH
RESNIK, and MARY PALINSKY,

                                    **MEMORANDUM & ORDER**
                    Plaintiffs,            17-CV-676 (PKC) (SMG)


            - against -


CROCKER COULSON,

                    Defendant.
--------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

Plaintiffs Anne Resnik, Samuel Herschkowitz, Elizabeth Resnik, and Mary Palinsky (collectively, "Plaintiffs") have brought this action against Defendant Crocker Coulson ("Defendant") asserting claims under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, the Electronic Communications Privacy Act ("Wiretap Act"), 18 U.S.C. § 2510 *et seq*., and various analogous state statutory and common law causes of action. (*See* Complaint ("Compl."), Dkt. 1, ¶¶ 105–86.) Before the Court are Defendant's objections to the Report and Recommendation ("R&R") of the Honorable Steven M. Gold, United States Magistrate Judge, recommending that Plaintiffs' motion for spoliation sanctions be granted. For the reasons stated herein, the Court overrules Defendant's objections and adopts the recommendations of Judge Gold's thorough and well-reasoned R&R in full.

## BACKGROUND

The Court assumes the parties' familiarity with the facts of this action as thoroughly recited in Judge Gold's R&R (*see* R&R, Dkt. 62, 2–10), incorporates those facts herein, and summarizes only the procedural history of the present motion.

Plaintiffs' federal motion for spoliation sanctions was filed on October 13, 2017. (Dkt. 22.) On February 5, 2018, after the spoliation motion had been fully briefed, the Honorable Jeffrey S. Sunshine issued the State Spoliation Order, finding, *inter alia*, that Defendant had engaged in intentional spoliation of evidence by using data wiping applications to destroy much of the spyware data on his electronic devices. (State Spoliation Order, Dkt. 37, at 50, 53.) On February 8, 2018, Judge Gold held a status conference with the parties, at which they discussed the effect of Justice Sunshine's order on the instant spoliation motion. (Feb. 8 Transcript, Dkt. 38.) Judge Gold allowed the parties to submit supplemental briefing relating to the State Spoliation Order, which was completed on March 23, 2018. (*See* Dkt. 41, 46.)

On January 4, 2019, Judge Gold issued the R&R, finding that Defendant had engaged in the intentional spoliation of electronically stored information (ESI) for the purpose of depriving Plaintiffs of its use in litigation, a violation of Federal Rule of Civil Procedure 37(e)(2). (*See generally* R&R, Dkt. 62.) The R&R recommended that: (1) Defendant be deemed to have installed and used spyware on Plaintiff Anne Resnik's telephone between October 6, 2014 and October 31, 2014; (2) Plaintiffs be required to make a prima facie showing of the other elements necessary to prevail on their claims under the CFAA, the Wiretap Act, and state and common law; (3) Plaintiffs be permitted to present, without challenge from Defendant, a theory of statutory damages under the Wiretap Act based on a reasonable extrapolation from what data remains; and (4) Plaintiffs be required to prove any compensatory damages they seek. (*Id.* at 34.)

Defendant filed objections to the R&R on January 16, 2019. (Objections ("Objs."), Dkt. 66.) On February 11, 2019, Plaintiffs filed a memorandum in opposition to Defendant's objections. (Dkt. 70.) A joint proposed pretrial order was filed on March 28, 2019, reserving the right to amend following the issuance of this Memorandum and Order. (Dkt. 81.)

# DISCUSSION

## I.	Standard of Review

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).  Generally, a magistrate judge's recommendation on a non-dispositive pre-trial matter will be reversed "only if the order is 'clearly erroneous or contrary to law.'" *Raimey v. Wright Nat. Flood Ins. Co.*, 76 F. Supp. 3d 452, 468 (E.D.N.Y. 2014) (Bianco, J.) (citing, *inter alia*, *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990)); *see also Thomas E. Hoar*, 900 F.2d at 525 ("A magistrate . . . may issue orders regarding non[-]dispositive pre[-]trial matters. The district court reviews such orders under the 'clearly erroneous or contrary to law' standard." (internal quotation omitted)).  "[T]he imposition of certain sanctions under Rule 37, in some instances, may be considered 'case dispositive,'" such as when a sanction "dispose[s] of [a] claim or defense." *Royal Park Investments SA/NV v. U.S. Bank Nat. Ass'n*, 349 F. Supp. 3d 298, 304 (S.D.N.Y. 2018) (citing *Thomas E. Hoar*, 900 F.2d at 525).

With respect to a magistrate judge's recommendation on a dispositive matter, the Court reviews *de novo* those determinations as to which a party has specifically objected.  *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to.").  However, "objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke *de novo* review." *Frankel v. New York City*, Nos. 06-CV-5450 (LTS) (DFE) & 07-CV-3436 (LTS) (DFE), 2009 WL 465645, at *2 (S.D.N.Y. Feb. 25, 2009) (quotation and brackets omitted); *accord Colvin v. Berryhill*, 734

F. App'x 756, 758 (2d Cir. 2018) ("[M]erely referring the court to previously filed papers or arguments does not constitute an adequate objection under . . . [Federal Rule of Civil Procedure] 72(b)." (quoting *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))).

## II.    Analysis

Judge Gold's R&R makes three principal recommendations:

(1)  that Defendant should be collaterally estopped from contesting whether he engaged in intentional spoliation of ESI;

(2)  that irrespective of the State Spoliation Order's preclusive effect, this Court should find the elements required for the imposition of sanctions under Federal Rule of Civil Procedure 37(e)(2) have been established; and

(3)  that as sanctions for spoliation, Defendant should be precluded from:

(i)   "denying that he 'jail broke' Plaintiff Anne Resnik's telephone and installed mSpy on it on or about October 6, 2014, that he installed OwnSpy on it on or about October 10, 2014, and that he made extensive use of these applications to, among other things, monitor Anne Resnik's whereabouts, intercept her text messages and emails, and listen in on her telephonic and live conversations until on or about October 31, 2014[;]"

(ii)  challenging any showing by Plaintiffs that the spoliated ESI would reasonably have corroborated a *prima facie* showing of the other elements of their claims; and

(iii) contesting a showing of Plaintiffs' statutory damages under the Wiretap Act based on a reasonable extrapolation from what ESI remains.

(R&R, at 15, 34.)

Defendant objects to each of Judge Gold's recommendations and the underlying findings that support them.  (*See generally* Objs., Dkt. 66.)  Applying the relevant standards of review, the Court considers Defendant's objections in turn.

### A.    Collateral Estoppel

Judge Gold first recommends that this Court give preclusive effect to the State Spoliation Order issued by Justice Sunshine in the divorce proceedings between Plaintiff Anne Resnik and Defendant.  (R&R, at 12–15.)  In that order, Justice Sunshine found that Defendant "actively

4

downloaded three (3) data wiping software programs and repeatedly used them in a purposeful attempt to destroy all evidence of his spyware usage."[1] (State Spoliation Order, Dkt. 37, at 53.) Justice Sunshine found Defendant's actions were "intentional and in bad faith." (*Id.*) He further found that Defendant's actions were done with "intent to prevent [Plaintiff Anne Resnik] and [the state court] from learning the extent" of his spyware usage. (*Id.* at 55.) On the basis of these findings, Justice Sunshine exercised his common law authority, as a New York state court judge, to impose spoliation sanctions, and struck Defendant's pleadings seeking spousal support, equitable distribution, and counsel fees from Anne Resnik. (*Id.* at 39–40, 69.)

In the R&R, Judge Gold recommended that this Court find that, based on the doctrine of collateral estoppel, the State Spoliation Order conclusively determined that Defendant's actions satisfy the requirements for imposing sanctions under Rule 37(e)(2). (R&R, at 15.) Defendant objects to that recommendation.

### 1. Legal Standard

Collateral estoppel, otherwise known as issue preclusion, "prevents parties . . . from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Zappin v. Cooper*, No. 16-CV-5985 (KPF), 2018 WL 708369, at *15 (S.D.N.Y. Feb. 2, 2018) (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002)). When

---

[1] The Complaint alleges that mSpy was installed on Plaintiff Anne Resnik's iPhone on October 6, 2014 and that OwnSpy was installed on October 10, 2014, shortly before Defendant filed an action for divorce. (Compl., Dkt. 1, ¶¶ 3–5, 7.) This allegation is supported by Justice Sunshine's State Spoliation Order, which found that Defendant installed spyware on the iPhone "in early October 2014." (State Spoliation Order, Dkt. 37, at 46.) However, there are discrepancies in the evidence as to the exact dates on which Defendant first installed spyware on the iPhone. Plaintiffs' expert, who participated in creating the first joint expert report in the divorce case, has submitted a declaration in this case indicating that he and Defendant's expert found forensic evidence of Defendant's use of spyware from June 29, 2012 to October 31, 2014. (Declaration of Yalkin Demirkaya, Dkt. 24, ¶ 22.)

the issue that is allegedly subject to preclusion was first litigated and decided in state court proceedings, federal courts are required to apply that state's preclusion law. *See Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 87 (2d Cir. 2000).

Because the Spoliation Order was issued in a New York state divorce action, New York preclusion law determines the preclusive effect of Justice Sunshine's findings in proceedings before this Court. In New York, collateral estoppel bars re-litigation of an issue when:

> (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.

*Conason v. Megan Holding, LLC*, 29 N.E.3d 215, 224 (N.Y. 2015) (citations omitted); *accord Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006) (finding preclusion under New York law when "(1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from re[-]litigating the issue had a full and fair opportunity to litigate the issue in the prior action"). Defendant argues that elements (1), (3), and (4) are not satisfied in this case. (Objs., Dkt. 66, at 3–10.)

## 2. Identity of Issues

Defendant first argues that the legal issues presented in the state case are not identical to those raised by Plaintiffs' motion for sanctions. (Objs., Dkt. 66, at 4–5.) Before Judge Gold, Defendant raised this same argument (Defendant's Supplemental Memorandum in Opposition ("Def.'s Supp."), Dkt. 41, at 5–6), but now presents two additional supporting cases (Objs., Dkt. 66, at 4–5).[2] Accordingly, the Court considers this issue *de novo*.

---

[2] Technically, because the two additional cases that Defendant cites in his objections advance the same argument previously presented to Judge Gold, they could and should have been presented in Defendant's initial briefing. Thus, the Court need not conduct *de novo* review of

In New York state court, spoliation sanctions may be imposed where (1) the party with control over the evidence was obligated to preserve it at the time of its destruction, (2) the evidence was destroyed with a culpable state of mind, and (3) the destroyed evidence was relevant to a claim or defense of the party seeking sanctions. (*See* State Spoliation Order, Dkt 37, at 41 (citing *Pegasus Aviation I, Inc. v Varig Logistica S.A.*, 46 N.E.3d 601, 602 (N.Y. 2015) (citing *VOOM HD Holdings LLC v. EchoStar Satellite LLC*, 939 N.Y.S.2d 321, 330 (1st Dept. 2012))).) Though the party that is accused of spoliation must act with a "culpable state of mind," sanctions may be imposed even if evidence is destroyed negligently rather than intentionally. *Pegasus Aviation I*, 46 N.E.3d at 607 ("[A]dverse inference charges have been found to be appropriate even in situations where the evidence has been found to have been negligently destroyed." (citations omitted)). That is because under New York common law, "'[a] culpable state of mind' for purposes of a spoliation sanction includes ordinary negligence." *VOOM HD Holdings LLC*, 939 N.Y.S.2d at 330 (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y.2003), and citing *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 121 (S.D.N.Y.2008)).

By contrast, a federal court must find that a party acted "with the intent to deprive another party" of the use of ESI in litigation before imposing sanctions under Federal Rule of Civil Procedure 37(e)(2). Fed. R. Civ. P. 37(e)(2). Defendant argues that because the standard governing Plaintiffs' motion in this case is higher than the common law standard that governed Justice Sunshine's decision, Defendant is not precluded from re-litigating the spoliation issues in this case. (Objs., Dkt. 66, at 4–5.) While Judge Gold acknowledged in the R&R that the standards for imposing sanctions in New York state courts differ from those of Rule 37(e)(2), he determined

---

Defendant's objection on the issue of identity. *Frankel*, 2009 WL 465645, at *2. The Court nonetheless does so.

that the findings made by Justice Sunshine in the State Spoliation Order were "clearly adequate to satisfy the requirements of [that Rule]." (R&R, at 14.) This Court agrees.

The current version of Rule 37(e) went into effect on December 1, 2015. *Citibank, N.A. v. Super Sayin' Pub., LLC*, No. 14-CV-5841 (SHS) (KNF), 2017 WL 462601, at *2 (S.D.N.Y. 2017). The 2015 Amendment to Rule 37(e) "forecloses reliance on inherent authority or state law to determine when certain measures should be used." Advisory Comm. Notes, 2015 Amendment. Rather, the sanctions authorized by Rule 37(e)(2) are only available when a court finds that the threshold requirements have been met. *Id.* Rule 37(e)(2)'s intent requirement specifically "rejects cases such as *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99 (2d Cir. 2002)," which authorized spoliation sanctions based on a finding of negligence or gross negligence. *Id.* Thus, there can be no question that a state court spoliation sanction based on a finding of *negligence* would not preclude Defendant from arguing that his conduct did not satisfy Rule 37(e)(2). *See CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 497 (S.D.N.Y. 2016) (finding that "a court could not rely on one of those other sources of authority to dismiss a case as a sanction for merely negligent destruction of evidence").

Unfortunately for Defendant, the state court did not find that he destroyed ESI *negligently*. Rather, Justice Sunshine found that Defendant "actively downloaded" data-wiping software and used it "in a *purposeful* attempt to destroy all evidence of his spyware usage" because he "thought the evidence [of spyware usage] would be [very] harmful to his case" if obtained by Anne Resnik and presented to the state court. (State Spoliation Order, Dkt. 37, at 53, 55–56 (emphasis added).) This finding clearly establishes the factual elements required by Rule 37(e)(2) even though the state court's analysis was not controlled by that Rule. Because Justice Sunshine made the factual

findings necessary to decide Plaintiffs' Rule 37(e)(2) motion, the application of collateral estoppel is appropriate in this case.

The cases cited to the contrary by Defendant are inapposite. In *DeMeo v. Kean*, the plaintiff filed a cross-motion in his federal civil action seeking sanctions against the defendants based on their destruction of video evidence. 754 F. Supp. 2d 435, 439–40 (N.D.N.Y. 2010). The defendants responded that the cross-motion was barred by collateral estoppel because it addressed the same issue previously decided by the New York state Supreme Court in Albany County. *Id.* at 447. That court had denied a motion for contempt based on the defendants' failure to comply with an order to preserve all video evidence. *Id.* The applicable standard required a showing that the defendants acted willfully. *Id.* In denying the contempt motion, the state court found that the destruction of evidence was "not willful." *Id.* at 441. The Northern District of New York declined to give collateral estoppel effect to that determination because of the different standards applicable to the state court contempt motion and the federal court sanctions motion. *Id.* at 448. Because the sanctions motion in the Northern District case was sought pursuant to the court's *inherent authority*, and not pursuant to Federal Rule of Civil Procedure 37(e)(2)), the plaintiff was only required to show *negligent* destruction of the evidence. *Id.* The Northern District found that collateral estoppel would be inappropriate because the state court had only found that the defendant's conduct was not willful, but never resolved—because it did not have to—whether the defendant's conduct was negligent. *Id.* ("The two issues in question [were] not identical because the state court proceeding required [the plaintiff] to establish that the defendants acted *willfully* while the [claim in federal court] require[d] *mere negligence*." (emphasis added)). Similarly, the court in *Sharpe v. Abate* found collateral estoppel inapplicable because the state court's dismissal of an Article 78 petition "did not necessarily rest on a finding that [would be] inconsistent with a

finding that [the] defendants [were] liable under the ADA." 887 F. Supp. 695, 700 (S.D.N.Y. 1995).

As even the cases cited by Defendant make clear, in deciding whether there is identity of issues, the Court should focus on whether the state court's determination of an issue *resolves* that issue in a way that is relevant to, or consistent with, the federal standard, not whether the state court's determination was *governed* by the federal standard. *Cf. Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt International B.V. v. Schreiber*, 327 F.3d 173, 180 (2d Cir. 2003) (approving a district court's finding that a plaintiff would be collaterally estopped in a diversity action from contesting a mens rea element previously established in a criminal prosecution). Here, Justice Sunshine expressly found that Defendant acted intentionally, which is the level of culpability required by Rule 37(e)(2). (*See* State Spoliation Order, Dkt. 37, at 69 (opting to impose more extreme sanctions based on Defendant's "intentional and bad faith spoliation").) Because the facts found in the state court proceeding satisfy the standard that applies to the Rule 37(e)(2) spoliation proceedings in this case, allowing Defendant to relitigate them would be a gross waste of judicial resources and invite inconsistent determinations of the same legal and factual issues.

### 3. Finality

Before Judge Gold, Defendant also argued against the application of collateral estoppel based on the State Spoliation Order's supposed lack of finality. (*See* Def.'s Supp., Dkt. 41, at 5.) Judge Gold held that the State Spoliation Order was "final" for purposes of issue preclusion because it had been "fully litigated," with the result that Justice Sunshine took dispositive action by striking Defendant's state court pleadings seeking certain financial relief. (R&R, at 14 (citing *Weiss v. Nat'l Westminster Bank PLC*, 278 F. Supp. 3d 636, 649 (E.D.N.Y. 2017).) Defendant

objects to Judge Gold's reliance on federal case law to determine whether Justice Sunshine's order is "final" for the purposes of collateral estoppel. (Objs., Dkt. 66, at 5–7.)

Despite presenting this objection, Defendant acknowledges that it is "unclear whether there is a discernible difference between" the New York and federal standards for finality, and presents no case law that would helpfully distinguish them. (*Id.* at 6.) Because state case law confirms Judge Gold's application of the finality requirement, the Court finds Defendant's objection on this point without merit. *See In re Capoccia*, 709 N.Y.S.2d 640, 643 (3d Dep't 2000) (applying collateral estoppel to civil sanction findings in other courts); *see also Bannon v. Bannon*, 1 N.E.2d 975, 977 (N.Y. 1936) ("The scope of the words 'final judgment' . . . should not be confined to a final judgment in an action. They may include any judicial decision upon a question of fact or law which is not provisional and subject to change . . . .") (cited by *Wilk v. Genesee & Wyoming R. Co.*, 846 N.Y.S.2d 511, 513 (4th Dep't 2007)); *Paar v. Bay Crest Ass'n*, No. 2013-2406, 2014 WL 4977416, at *2 (N.Y. Sup. Ct. Oct. 6, 2014) ("Where the Court's dispositive directive is in the nature of an order rather than a judgment . . . that order will nonetheless be given preclusive effect if the doctrinal pre-requisites . . . are satisfied . . . ." (citing *Bannon*)); *Town v. Asadourian*, 722 N.Y.S.2d 187, 188 (3d Dep't 2000) ("[B]ecause no *order* or final judgment was ever entered . . . the doctrine[] of collateral estoppel . . . [was] inapplicable to the instant matter." (emphasis added)); *cf. In re Dunn*, 27 N.E.3d 465, 467–68 (N.Y. 2015) (denying collateral estoppel effect to a sanctions order because the proceedings were "cursory" in nature, *not* because a sanctions order is non-final).

### 4. Full and Fair Opportunity to Litigate

Defendant also objects to Judge Gold's recommendation to apply collateral estoppel based on the grounds that he did not have a full and fair opportunity to litigate the issue of spoliation in the state court proceedings. (Objs., Dkt. 66, at 7–10.) Defendant argues that he represented

himself *pro se* for critical parts of the state court litigation relating to the spoliation, which placed him at a disadvantage relative to Plaintiff Anne Resnik, who was consistently represented by counsel. (*Id.* at 7.) Defendant further asserts that his invocation of the Fifth Amendment privilege against self-incrimination "severely handicapped" him in the state court spoliation proceedings, denying him the ability to fully participate. (*Id.* at 8.) Defendant also objects to the lack of an evidentiary hearing on the spoliation issue in state court and his inability to question Anne Resnik's computer forensic expert. (*Id.* at 8–9.)

Large portions of Defendant's objections on these points are lifted, nearly verbatim, from Defendant's submissions to Judge Gold. (*Compare id.*, at 7–9, *with* Def.'s Supp., Dkt. 41, at 7–9.) The most substantial difference from Defendant's prior submissions appears to be his objection to the R&R's characterization of his choice to proceed *pro se* in the state proceedings as "in essence elect[ive]" (*see* R&R, at 15), arguing that for an "average person, like [Defendant], living in New York City with two children, earning an annual income in excess of $100,000 does not provide him the ability to afford the services" associated with his litigation (Objs., Dkt. 66, at 9). Because Defendant's arguments on this point are recycled versions of those presented to Judge Gold, the Court scrutinizes this portion of the R&R only for clear error. *See Lilakos v. N.Y.C.*, No. 14-CV-5288 (PKC) (LB), 2018 WL 6242227, at *2 (E.D.N.Y. Nov. 29, 2018) (applying clear error review in light of the plaintiff's "rehashed and previously rejected arguments").

The Court finds no clear error in Judge Gold's finding that Defendant enjoyed a full and fair opportunity to litigate the issues in the state court spoliation proceedings. Defendant's *pro se* status for portions of those proceedings did not render the proceedings insufficient or unfair. *Shirley v. Danziger*, 676 N.Y.S.2d 369, 370 (4th Dep't 1998) ("We reject the contention of plaintiff that she did not have a full and fair opportunity to litigate . . . because she was proceeding *pro se*

at the time."). And formal hearings are not categorically required to provide a full and fair opportunity to litigate, particularly where, as here, the final decision relies in part on the party's own expert's analysis. (*See* State Spoliation Order, Dkt. 37, at 13–19.); *see also Johnson v. County of Nassau*, 411 F. Supp. 2d 171, 182 (E.D.N.Y. 2006) ("[T]he absence of a hearing will not render a [prior] determination inadequate where the plaintiff was otherwise given a full opportunity to present his case . . . ." (citing *Chirgotis v. Mobil Oil Corp.*, 512 N.Y.S.2d 686, 688 (1st Dep't 1987))). Furthermore, in contrast to Defendant's objections, the opportunity for a litigant to make strategic choices, such as invoking Fifth Amendment privileges, is part and parcel of a full and fair opportunity to litigate. Such choices do not necessarily come without a cost: while the Fifth Amendment affords a litigant certain protections, it "does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). However, the fact that a litigant may suffer adverse consequences from his strategic decisions does not deprive him of a "full and fair opportunity for litigation in the prior proceeding." *Samirah v. Sabhnani*, 772 F. Supp. 2d 437, 444 (E.D.N.Y. 2011) (quoting *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986)); *see also id*. (finding that the invocation of the Fifth Amendment does not bar application of collateral estoppel). Judge Gold's finding that Defendant had a full and fair opportunity in the state court proceedings to litigate the issues presented by Plaintiffs' instant motion is not clearly erroneous.

\* \* \*

For the reasons stated above, the Court adopts Judge Gold's recommendation that Defendant be collaterally estopped from contesting Justice Sunshine's determination that "[Defendant] engaged in the kind of intentional spoliation of ESI that triggers the severe sanctions authorized by Rule 37(e)(2)." (R&R, at 15.) In light of that determination, the Court finds that it may employ the sanctions listed in Rule 37(e)(2) as appropriate in the context of this case.

**B.     Rule 37(e)(2)**

Because the Court concludes that Defendant is collaterally estopped from contesting the elements of a violation of Rule 37(e)(2), it need not adopt Judge Gold's alternative finding that, independent of Justice Sunshine's determinations in the state proceedings, Plaintiffs have established the necessary elements for a Rule 37(e)(2) sanction in this case as well.  Nevertheless, the Court considers Defendant's objections to those alternative findings.

1.     <u>Legal Standard</u>

As discussed, Plaintiffs seek spoliation sanctions pursuant to Federal Rule of Civil Procedure 37 for Defendant's destruction of ESI.  Subsection (e) of Rule 37 sets forth the standard for imposing such sanctions:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> > (A) presume that the lost information was unfavorable to the party;
> >
> > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> >
> > (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

This rule was enacted in 2015 and applies exclusively to the spoliation of ESI.  The specific measures detailed in Subsections (2)(A) through (2)(C) are only available if the Rule's textual requirements are established, and may not be imposed simply as a matter of the Court's inherent authority.  *See* Advisory Comm. Notes, 2015 Amendment.

Though courts are divided with respect to the appropriate standard of proof to apply to a claim of spoliation, *see CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 498–99 (S.D.N.Y. 2016), Judge Gold's R&R applied the clear and convincing evidence standard (R&R, at 12). Because Defendant did not object, and the Court finds no clear error in the application of this standard, the Court evaluates Defendant's objections under the clear and convincing evidence standard.

### 2. Duty to Preserve ESI

Defendant objects to the R&R's finding that Defendant had a duty to preserve the allegedly spoliated spyware data at the time of its alleged spoliation. (Objs., Dkt. 66, at 11–17.) Judge Gold found this duty was imposed by two separate state court orders stemming from the divorce proceedings before Justice Sunshine: the State Preliminary Conference Order, issued on February 13, 2015 (Dkt. 66-3), and the State Show Cause Order, issued on May 15, 2015 (Dkt. 66-4), the day before Defendant allegedly installed and executed wiping software on his electronic devices.

"The obligation to preserve evidence arises when [a] party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Rabenstein v. Sealift, Inc.*, 18 F. Supp. 3d 343, 360 (E.D.N.Y. 2014) (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir.2001)). The duty to preserve ESI imposed by Rule 37(e) incorporates this longstanding common law duty. *See* Advisory Comm. Notes, 2015 Amendment. In addition to the common law duty to preserve such evidence, the Rule recognizes that such duties may be imposed by independent sources, such as statutes and court orders in another case. *Id*.

Judge Gold first found that the State Preliminary Conference Order placed Defendant on notice that he was under a duty to preserve evidence related to his use of spyware. (R&R, at 19.) That Order contained a provision relating to the preservation of electronic evidence, providing:

> For the relevant periods relating to the issues in this litigation, each party shall maintain and preserve all electronic files, other data generated by and/or stored on the party's computer system(s) and storage media (*i.e.*[,] hard disks, floppy disks, backup tapes), or other electronic data. Such items include, but are not limited to, e-mail and other electronic communications, word processing documents, spreadsheets, data bases, calendars, telephone logs, contact manager information, internet usage files, offline storage or information stored on removable media, information contained on laptops or other portable devices and network access information.

(Dkt. 66-3, at ECF 4.) Defendant argues that this Order cannot possibly have been meant to apply to Defendant's alleged use of surveillance software to spy on Plaintiff Anne Resnik, as the grounds for divorce had already been resolved. (Objs., Dkt. 66, at 12–13.)

Judge Gold also found that the State Show Cause Order, which directed Defendant to turn over all of his computing devices, placed him under a duty to preserve ESI. (Dkt. 66-4; R&R, at 20.) It is unclear when or whether Defendant was provided with the State Show Cause Order, as the Order was obtained on an *ex parte* basis out of a concern that giving Defendant notice would allow him an opportunity to destroy ESI. (State Spoliation Order, Dkt. 37, at 6–7.) Nevertheless, it cannot be disputed that Defendant was on notice of his duty to preserve any evidence potentially relevant to the ongoing litigation, as he acknowledged through counsel on the record, that he had "accidental" advance notice that he was going to be served with the State Show Cause Order by the Sheriff of the City of New York based on a call to "check" if he would be home. (*Id.* at 10.) Defendant does not dispute this fact in his objections, save to point out that the concession was made by his attorney, a distinction without a meaningful difference. (*See* Objs., Dkt. 66, at 14.) This Court finds Defendant's admission, even if only through counsel, of Defendant's notice that he would be served with the State Show Cause Order by the Sheriff is sufficient to establish that he was under a duty to preserve ESI.

Defendant argues that, even if the state court orders imposed a duty to preserve ESI, that duty does not extend to this case because the divorce action is distinct from the present litigation.

(Objs., Dkt. 66, at 15–17.) Defendant cites no case law in support of this argument, and the Court has identified none. Allowing Defendant to prevail on this objection would work an unreasonable application of Rule 37, allowing the destruction of ESI even though it was entirely foreseeable that the use of spyware during a divorce proceeding and ensuing custody dispute would result in related litigation. In any case, courts have found an independent duty to preserve evidence may arise simply because the defendant himself becomes aware of relevant facts that could likely lead to litigation. *See Steves & Sons, Inc. v. Jeld-Wen, Inc.*, 327 F.R.D. 96, 106–07 (E.D. Va. 2018) (finding that "familiarity with the predicates for litigation" should have caused the defendant to reasonably anticipate litigation, particularly in light of his previous involvement in litigation). Thus, even if the duty to preserve ESI imposed by the state court orders would not support a finding that a duty to preserve ESI existed for the purposes of Rule 37(e) in this case, Defendant's prior involvement in closely related litigation and his knowledge of the relevant facts that could lead to litigation, *i.e.*, his unlawful surveillance of Plaintiff Anne Resnik's electronic communications, are sufficient to find that an independent duty to preserve existed.

Accordingly, the Court finds Defendant's objections on this point without merit and adopts the R&R's finding that both state court orders were sufficient to impose a duty on Defendant to preserve the allegedly spoliated ESI.

### 3. Sufficiency of the Evidence

Defendant also objects to Judge Gold's recommendation that this Court find that Plaintiffs have submitted clear and convincing evidence establishing that Defendant acted in bad faith, that the allegedly spoliated ESI was relevant, that Defendant failed to take reasonable steps to preserve that ESI, or that Defendant destroyed ESI with the requisite intent to deprive Plaintiffs of its use in litigation. (Objs., Dkt. 66, at 17–25.) Defendant bases his objection on Plaintiffs' supposed failure to prove predicate facts, namely, the content and existence of the allegedly spoliated data.

(*Id*. at 18.)  As these arguments rehash those presented to Judge Gold, the Court reviews the R&R for clear error.  (*Compare* Def.'s Supp., Dkt. 41, at 9, *with* Objs., Dkt. 66, at 18.)

By its very nature, a spoliation finding is an acknowledgment that the evidence no longer exists.  A party seeking spoliation sanctions is not necessarily required to produce direct evidence in order to prevail, particularly when it comes to ESI that leaves few traces upon deletion.  *Kronisch v. United States*, 150 F.3d 112, 129–30 (2d Cir. 1998) ("Although there [was] no direct evidence[,] . . . the destruction of [evidence] . . . made it 'impossible to reconstruct the operational use of [that evidence]' . . . .  Under these circumstances, requiring more direct proof than [the] plaintiff ha[d] provided before permitting an adverse inference to be drawn . . . would be at odds with the purposes of the adverse inference rule.")  Here, however, the Court finds that the trace digital fingerprints identified in the parties' forensic expert report are sufficient to infer that the allegedly spoliated data once existed and that it related to Defendant's alleged surveillance of Plaintiff Anne Resnik.  Accordingly, the R&R did not err by relying on trace digital fingerprints in its analysis.

Where no direct evidence remains of spoliated ESI, substantial circumstantial evidence of the evidence's destruction may suffice to support spoliation sanctions.  Thus, in *DVComm LLC v. Hotwire Commc'ns., LLC*, the Court credited a computer forensic expert's finding that the plaintiff, through its owner, used a "double deletion" technique to delete emails containing crucial information.  No. 14-CV-5543, 2016 WL 6246824, at *8 (E.D. Pa. Feb. 3, 2016).  Similarly, in *Feist v. Paxfire, Inc.*, the plaintiff used software that cleared her internet browser history.  No. 11-CV-5436 (LGS) (RLE), 2016 WL 4540830, at *3–*5 (S.D.N.Y. Aug. 29, 2016).  Though the browser history was unrecoverable and no direct evidence of its contents remained, the Court

found the plaintiff's use of the cleaner software and failure to backup her files sufficient to support the imposition of sanctions. *Id.*

As in the *Feist* and *DVComm LLC* cases, the R&R properly relied on substantial circumstantial evidence to determine the existence and relevance of allegedly spoliated ESI. A joint expert report filed in state court indicates that a forensic analysis shows that:

> (3) separate data-wiping utilities (Free File Shredder, Disk Scrubber and Hard Disk Scrubber) were installed and executed on [Defendant's] Computing Device 010 on May 16, 2015, starting at approximately 9:00 pm. . . . This device appears to have been the most recent personal computer in use by [Defendant] at the time [Defendant's] Computing Devices were seized by the Sheriff.

(Dkt. 66-5, at 10.) Plaintiffs have submitted a sworn affidavit from Yalkin Demirkaya, one of the experts retained by the parties, including Defendant, to conduct the forensic analysis. (Dkt. 70-3.) Demirkaya's affidavit confirms the expert report's findings, stating:

> [T]here is concrete evidence of spyware usage and acts of spoliation, apparently committed by [Defendant]. Three separate data wiping utilities which had to be intentionally downloaded and installed . . . . [were] executed at least once[.]

(*Id.* ¶ 23.)

Coupled with the fact that numerous emails to various spyware companies were found among the little remaining data on Defendant's computer (*see* Dkt. 30, at ¶ 11) and that the evidence shows Defendant was using spyware programs between June 29, 2012 and October 31, 2014 (*see* Dkt. 70-3, ¶ 22), the unrefuted circumstantial evidence presented by Plaintiffs plainly supports the R&R's finding that Defendant destroyed relevant ESI, in such a manner that it cannot be restored, in order to deprive Plaintiffs of its use in litigation.

Defendant's objection is ironic, if only because it confirms just how thoroughly incompatible Defendant's actions were with Rule 37's admonition that a party take "reasonable steps to preserve" ESI. Irony notwithstanding, the Court does not believe that Rule 37 creates a regime where the more effective a party is at irretrievably destroying evidence, the better they will

fare in litigation. Plaintiffs have presented overwhelming evidence in this case that Defendant destroyed ESI after he became aware that it was about to be seized by the Sheriff of New York. The circumstances surrounding that action strongly suggest that the destroyed ESI included data relating to the alleged surveillance of Plaintiff Anne Resnik by Defendant.

Accordingly, the Court finds no clear error in the R&R's determination that Plaintiffs have presented clear and convincing evidence, not credibly refuted by Defendant, that supports a finding that Defendant's destruction of ESI meets the standard for the imposition of sanctions under Rule 37(e)(2).

### C.     Appropriate Sanctions

As a final backstop, Defendant asks that, even if the Court adopts the R&R's recommendations over Defendant's objections, it modify the sanctions recommended by the R&R. (Objs., Dkt. 66, at 25.) Specifically, Defendant seeks an order "allowing [him] to present any and all non-frivolous defenses and challenges as to liability and damages based on evidence that does exist and applications of the law." (*Id.*)

#### 1.     Legal Standard

Under Rule 37(e)(2), once a court finds that a party destroyed ESI with intent to deprive another party of its use in litigation, the court has discretion to impose any or all of the remedies allowed in Subsections (A) through (C). Fed. R. Civ. P. 37(e)(2)(A)–(C). The Court is not required, however, to adopt any of these measures, and should ensure that the remedy fits the wrong. *See* Advisory Comm. Notes, 2015 Amendment. Caution is particularly warranted when considering case-dispositive sanctions, such as dismissal or default judgment. *See World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159 (2d Cir. 2012). Ultimately, any sanction should be designed to: "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the

prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.'" *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 501-02 (S.D.N.Y. 2016) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)).

### 2.    Liability Sanction

The R&R's primary recommended sanction on liability grants an adverse inference as to Defendant's use of spyware:

> [D]efendant should be precluded from denying that he 'jail broke' Anne Resnik's telephone and installed mSpy on it on or about October 6, 2014 and that he installed OwnSpy on it on or about October 10, 2014, and that he made extensive use of these applications to, among other things, monitor Anne Resnik's whereabouts, intercept her text messages and emails, and listen in on her telephonic and live conversations until on or about October 31, 2014.

(R&R, at 32.)  Defendant appears to seek a modification of the sanction that would allow him to show that his use of the various spyware devices was limited, rather than "extensive."  (Objs., Dkt. 66, at 27–28.)  This modification, however, would vindicate Defendant's spoliation of evidence by allowing him to benefit from the destruction of any and all evidence that would establish its extensiveness.  Because Defendant's proposed modification of the recommendation sanction would undermine the public policy underlying spoliation sanctions, *see CAT3*, 164 F. Supp. 3d at 501–02, the Court rejects it and adopts Judge Gold's recommended sanction regarding the use of spyware in full.

Judge Gold's R&R makes clear that the recommended liability sanction does not completely establish Defendant's liability for Plaintiffs' claims.  Thus, he further recommends that:

> [P]laintiffs should be required to make a *prima facie* showing of the other elements of their claims. To the extent it is reasonable to believe that the data wiped from defendant's electronic device might have corroborated any *prima facie* showing [P]laintiffs make, [D]efendant should be precluded from challenging that showing.

(R&R, at 33.)  Defendant seeks clarification on the scope of this recommendation.  (Objs., Dkt. 66, at 29–30.)  Notwithstanding the adverse inference granted to Plaintiffs regarding Defendant's "jail breaking" of Plaintiff Anne Resnik's iPhone and surveillance of her activities, the Court will require Plaintiffs to make a *prima facie* showing of the other elements of their claims.  Defendant may respond to that showing with any defenses as to liability and damages that could not themselves be reasonably rebutted through the use of spoliated evidence.  For example, Defendant may argue that a particular plaintiff's claim was filed outside of the applicable statute of limitations, but he may not challenge a *prima facie* showing, for example that a call placed by Plaintiff Elizabeth Resnik to Plaintiff Anne Resnik on October 30, 2014, if shown to have occurred, would have been intercepted by Defendant's spyware.

### 3.  Damages Sanction

The R&R also recommends an adverse inference as to damages:

> [A]n order [should] be issued permitting [P]laintiffs to present a theory of their statutory damages under the Wiretap Act based on extrapolation from what data remains, to the extent this extrapolation is reasonable, and that [D]efendant be precluded from challenging that theory of damages.

(R&R, at 34.)  This adverse inference would allow Plaintiffs to make a reasonable extrapolation as to statutory damages under the Wiretap Act, which provides for penalties of up to $100 per day, 18 U.S.C. § 2520(c)(2)(B), and to present a theory that Defendant intercepted Plaintiff Anne Resnik's communications before October 6, 2014 and after October 31, 2014.  In essence, the inference would allow Plaintiffs to present a theory of consistent, if not daily, spyware usage without challenge.  Defendant seeks the ability to challenge such a presentation through, *inter alia*, expert testimony and emails between spyware companies and Defendant that would tend to show that Defendant's usage of spyware was sporadic and limited.  (Objs., Dkt. 66, at 31–33.)  However, the Court cannot clarify the precise scope of the evidence that will be permitted on Defendant's

use of the spyware in the abstract. Rather, in advance of trial, Defendant will have to submit motions *in limine* identifying the actual evidence it is seeking to introduce on this issue. For example, to the extent Defendant wishes to introduce emails he sent to spyware companies to show that his use of the spyware was sporadic, *e.g.*, emails stating that the spyware was not functioning properly, the emails themselves are inadmissible hearsay. While Defendant ordinarily might argue that the emails should be admitted to corroborate his anticipated testimony that he was prevented from using the spyware regularly because of alleged malfunctions, the Court is likely to preclude such self-serving testimony, as Plaintiffs will not be able to refute that testimony because of Defendant's spoliation. Defendant also will not be permitted to challenge Plaintiffs' theory of statutory damages through arguments based on the existence or non-existence of the allegedly spoliated data. For example, Defendant will not be allowed to present expert testimony, using the remaining ESI from the spyware, to opine that Defendant's use was sporadic or to opine that the frequency of Defendant's use for the entire period that the spyware was installed can be extrapolated or inferred from the remaining ESI.

Finally, the Court clarifies that it will require Plaintiffs to prove any emotional damages or other injury for which they seek compensatory damages. Defendant will not be precluded from challenging Plaintiffs' showing of compensatory damages.

## CONCLUSION

For the reasons stated herein and in the Report and Recommendation of the Honorable Steven M. Gold, the Court finds that Defendant destroyed relevant evidence that he had a duty to preserve, and which is now irrecoverable, with the intent to deprive Plaintiffs of its use in litigation. Based on that finding, the Court adopts Judge Gold's Report and Recommendation in its entirety, and imposes the following sanctions pursuant to Rule 37(e)(2):

(1) Defendant may not deny that he "jail broke" Plaintiff Anne Resnik's telephone and installed mSpy on it on or about October 6, 2014 and that he installed OwnSpy on it on or about October 10, 2014, and that he made extensive use of these applications to, among other things, monitor Anne Resnik's whereabouts, intercept her text messages and emails, and listen in on her telephonic and live conversations until on or about October 31, 2014.

(2) Defendant may only respond to a *prima facie* showing of Plaintiffs' claims by presenting defenses that could not be reasonably challenged by the spoliated ESI.

(3) The Court will instruct the jury that it may presume that the spoliated ESI would have tended to corroborate Plaintiffs' theory of statutory damages.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 30, 2019
   Brooklyn, New York