UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
ANNE RESNIK, SAMUEL HERSCHKOWITZ,
M.D., ELIZABETH RESNIK, and MARY
PALINSKY,

                        Plaintiffs,

            - against -

CROCKER COULSON,

                       Defendant.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
17-CV-676 (PKC) (SMG)

PAMELA K. CHEN, United States District Judge:

      Plaintiffs Anne Resnik, Samuel Herschkowitz, Elizabeth Resnik, and Mary Palinsky

(collectively, "Plaintiffs") prevailed in this action against Defendant Crocker Coulson.  Currently

before the Court is Plaintiffs' motion for attorneys' fees and costs.  For the reasons that follow,

Plaintiffs' motion is granted in part.  The Court awards Plaintiffs $228,332 in attorneys' fees, $550

in costs, and $37,646.86 in expert fees, for a total of $266,528.86.

## BACKGROUND

      Coulson and Anne Resnik were parties to divorce and custody proceedings in Kings

County Supreme Court.  (*See* Complaint ("Compl."), Dkt. 1, ¶¶ 1, 16.)  During those proceedings,

Coulson was found to have installed spyware on Anne Resnik's phone, which he used, *inter alia*,

to "knowingly and purposefully violate[] [her] attorney-client privilege through an ongoing course

of conduct of intercepting hundreds of her attorney-client communications and 'listening in' on

her attorney-client privileged consultations."  *Crocker C. v. Anne R.*, 100 N.Y.S.3d 609 (Table),

at *22 (Sup. Ct. 2018).  Additionally, Justice Jeffrey S. Sunshine, who presided over the state

family court proceedings, found that Coulson "engaged in spoliation of evidence when he installed

1

multiple data 'wiping' applications and used them to destroy much of the spyware data on his computing devices," *id.*, and that the spoliation was "intentional and in bad faith," *id.* at *23.

On February 6, 2017, Plaintiffs Anne Resnik, Samuel Herschkowitz, M.D., Elizabeth Resnik, and Mary Palinski[1] commenced this action asserting claims under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, and Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510 *et seq.*, as well as various state law claims. (*See* Compl., Dkt. 1, ¶ 101.) On October 13, 2017, Plaintiffs filed a motion for spoliation sanctions based on Defendant having destroyed certain electronically stored information ("ESI") relevant to the litigation. (Dkt. 22.) On January 4, 2019, Magistrate Judge Gold issued a Report and Recommendation ("R&R") finding that Defendant had engaged in the intentional spoliation of ESI for the purpose of depriving Plaintiffs of its use in this litigation. (*See generally* R&R, Dkt. 62.) On March 30, 2019, this Court adopted the R&R in full, over Defendant's objections. (*See* Sanctions Order, Dkt. 82.) In the interim, Defendant filed a cross-motion for discovery sanctions based on Plaintiffs' failure to comply with discovery requests, the parties' stipulated discovery schedule, and Judge Gold's February 8, 2018 discovery orders. (*See* Defendant's Sanctions Cross Motion, Dkt. 42; Defendant's Sanctions Brief, Dkt. 44, at 3.) Defendant requested, as a sanction, that Plaintiffs be prohibited from offering at trial any proof of Plaintiff Anne Resnik's phone calls with Plaintiffs David Resnik, Elizabeth Reznik, and Mary Palinski. (*Id.*) On January 4, 2019, Judge Gold found this motion moot in light of discovery rulings made on the record at a conference held on September 28, 2018. (*See* Sept. 28, 2018 Minute Entry, Dkt. 61; Jan. 4, 2019 Order.) On February

---

[1] Dr. Herschkowitz is Anne Resnik's psychiatrist (Compl., Dkt. 1, ¶ 20), Elizabeth Resnik is her mother (*id.* ¶ 26), and Mary Palinski her sister (*id.* ¶ 29). David Resnik, Anne's brother, was initially a Plaintiff but withdrew his complaint during the pendency of the proceedings. (Stipulation of Dismissal, Dkt. 60.)

22, 2019, Defendant filed a second motion for sanctions against Plaintiff Elizabeth Resnik (Defendant's Second Sanctions Motion, Dkt. 72), seeking to dismiss all of her remaining claims against Defendant "based on the repeated, continuing, intentional, and prejudicial discovery violations committed by her and her counsel" (Defendant's Second Sanctions Brief, Dkt. 74, at 3). On May 9, 2019, Judge Gold granted in part and denied in part Defendant's motion, holding that Plaintiff Elizabeth Resnik was required to list all telephone calls that formed the basis of her claims and produce any documents that reflected these calls, and that any call not listed could not form the basis of her claims in this case. (Discovery Sanctions Order, Dkt. 87.)

Following motions *in limine* and pre-trial conferences (*see* Dkt. 88; Sept. 4, 2019 Minute Order; Sept. 5, 2019 Order; Sept. 16, 2019 Minute Order), a jury trial was held from September 16–19, 2019 (*see* Sept. 16–19, 2019 Minute Entries). The jury found that Defendant violated the CFAA as to Anne Resnik, and awarded her $200,000 in compensatory damages for that violation. (Jury Verdict Sheet, Dkt. 114, at 1–2.) The jury also found that Defendant had violated the ECPA as to all Plaintiffs, awarding Anne Resnik $41,500 in statutory damages and $200,000 in punitive damages, and each of the remaining Plaintiffs $10,000 in statutory damages. (*See id.* at 2–3.) The jury also awarded Anne Resnik $500 in compensatory damages for Defendant's violation of the Trespass to Chattels Claim under New York law. (*Id.* at 4.) The jury further found for Plaintiff Mary Palinski on her North Carolina Electronic Surveillance Act claim, but did not award damages. (*Id.* at 4–5.) A Clerk's Judgment was entered on September 20, 2019. (Dkt. 117.)

Plaintiffs filed a Motion for Attorneys' Fees and Costs on October 4, 2019,[2] seeking fees in the amount of $741,397.50 as of September 20, 2019, costs in the amount of $18,965.17, and

---

[2] Prior to the trial, the Court ordered that, "[s]hould the jury return a verdict in Plaintiffs' favor, Plaintiffs' counsel can seek attorneys fees in the ordinary course; a specific jury instruction or verdict sheet is not necessary." (Sept. 4, 2019 Order.)

$56,470.29 in expert fees, pursuant to the ECPA and Federal Rule of Civil Procedure 54(d). (Plaintiffs' Motion for Attorneys' Fees & Costs ("Pls.' Fees Mot."), Dkt. 118.) Defendant opposed the motion (Defendant's Opposition Memorandum ("Def. Opp."), Dkt. 119), Plaintiff replied on November 1, 2019 (Plaintiffs' Reply Memorandum ("Pls.' Reply"), Dkt. 122), and the Court deemed the matter fully briefed on November 18, 2019, when it denied Defendant's motion to file a sur-reply (Nov. 18, 2019 Order).

## DISCUSSION

### I.    Legal Standard

District courts have broad discretion, using "their experience with the case, as well as their experience with the practice of law, to assess the reasonableness" of each component of a fee award. *Fox Indus., Inc. v. Gurovich*, No. 03-CV-5166 (TCP) (WDW), 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)).  When analyzing a request for attorneys' fees, a court must first determine the "lodestar" amount, or "the product of a reasonable hourly rate and the reasonable number of hours required by the case," also known as the "presumptively reasonable fee." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)).  In determining a reasonable hourly rate, courts weigh twelve factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186 n.3 (citation omitted); *see also Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012) ("[D]etermination of a reasonable hourly rate contemplates . . . prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel[.]" (internal quotation marks and citation omitted)).

Additionally, "[i]n reviewing a fee application, a district court must examine the particular hours expended by counsel with a view to the value of the work product to the client's case." *Echevarria v. Insight Med., P.C.*, 102 F. Supp. 3d 511, 516 (S.D.N.Y. 2015) (citing *Lunday v. City of Albany*, 42 F.3d 131, 133 (2d Cir. 1994) (*per curiam*)). "The court is to exclude 'excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims.'" *Id.* (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir.1999)).

> [T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

*Fox v. Vice*, 563 U.S. 826, 838 (2011). "The Second Circuit has held [that] for a prevailing plaintiff, 'attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *Torcivia v. Suffolk County*, 437 F. Supp. 3d 239, 257 (E.D.N.Y. 2020) (citing *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)); *see also Andrews v. City of New York*, No. 14-CV-1721 (FB) (CLP), 2015 WL 5773961, at *4 (E.D.N.Y. Sept. 29, 2015) ("The fee applicant bears the burden of documenting the appropriate hours expended and hourly rates. . . . It is clearly the attorney's burden to establish his hourly rate with satisfactory evidence—in addition to the attorney's own affidavits, and fee applications are subject to denial where the fees have not been adequately documented." (internal quotation marks, alterations, and citations omitted)).

## II.      Calculation of Fees

Plaintiffs' attorneys are asking for $741,397.50 in attorneys' fees.  (Pls.' Fees Mot., Dkt. 118, ¶ 3.)  For the reasons contained herein, the Court grants Plaintiffs' motion but reduces that amount.

### A.      Reasonable Hourly Rates

The Court finds that Plaintiffs' counsel has failed to sufficiently justify why higher rates for the attorneys and staff representing Plaintiffs should be adopted, and instead uses the prevailing rates for the Eastern District.

 "Th[e] calculus [of reasonable fees] is locality-sensitive; in order to determine a reasonable hourly rate the court must look to 'the prevailing market rates in the relevant community.'" *Andrews*, 2015 WL 5773961, at *5 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).  "The relevant community . . . is the district in which the court sits."  *Farbotko v. Clinton County*, 433 F.3d 204, 208 (2d Cir. 2005) (internal citation omitted).  Plaintiff's lead attorney, Daniel Hurteau, submitted a declaration detailing his estimation of the hourly rates for the Nixon Peabody LLP attorneys and staff that worked on this case, which he alleges are "standard rates for the attorneys who worked on this matter, commensurate with the prevailing rate for a New York City Amlaw 200 firm."  (*See* Hurteau Declaration ("Hurteau Decl."), Dkt. 118-2, ¶¶ 4–5, 10.)  However, Hurteau did not provide any support for his assertions about the prevailing rate of law firms of similar size and caliber, nor did he cite any cases suggesting as much.  *Cf. Andrews*, 2015 WL 5773961, at *5 (finding insufficient a reference to a National Law Journal survey of billing rates in plaintiff's attorney's fees memorandum without attaching actual survey).  Indeed, Plaintiffs' counsel concedes that the billable rates requested exceed those prevailing in the Eastern District but argues that this was "counterbalanced by the lean staffing to the case," such that for the last

two years of litigation only two attorneys primarily worked on the case.  (Plaintiffs' Attorneys' Fees Memorandum ("Pls.' Memo"), Dkt. 118-1, at 7–8.)

Plaintiffs listed the rates for partner Daniel Hurteau and associate Leah Threatte Bojnowski at $905–$995 and $635–$745, respectively, and briefly detailed the credentials of these two attorneys.  (Hurteau Decl., Dkt. 118-2, ¶¶ 7–8, 10.)  Hurteau has practiced law for over 30 years and has been a partner with Nixon Peabody for twenty-nine years, focusing on complex business and tort-related actions in the healthcare realm, as well as representing owners and developers in a wide variety of commercial and construction-related matters.  (*Id.* ¶ 7.)  Bojnowski has been a Nixon Peabody associate for eleven of the fourteen years she has practiced law and is a trial attorney for business entities, primarily in the investment banking, consumer products, and automotive industries.  (*Id.* ¶ 8.)  Notably, neither attorney purports to have expertise with respect to cases such as this one, which involves the use of spyware against individuals.  Nor have Plaintiffs cited to any case law to support their contention that "lean staffing" of two attorneys warrants an upward departure from the prevailing rates of this District.  Indeed, this fact is presumably accounted for in the *number* of hours billed by the two attorneys and should have no bearing on the rate that they deserve for that work.  Therefore, the Court finds that Plaintiffs have failed to provide sufficient evidence to justify the higher hourly rates they request for their attorneys, and the Court instead applies the prevailing rates for this District.

"[T]he prevailing rates for attorneys in the E.D.N.Y. . . . are approximately $300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates."  *Cleanup N. Brooklyn by Chantrtanapichate v. Brooklyn Transfer LLC*, 373 F. Supp. 3d 398, 404 (E.D.N.Y. 2019) (citing *Valvo v. City of New York*, No. 13-CV-6562 (NG) (SMG), 2018 WL 3999011 (E.D.N.Y. Jan. 23, 2018); *Pocius v. Sec. Auto Sales Inc.*, No. 16-CV-400 (JFB)

(SIL), 2018 WL 3999649, at *4 (E.D.N.Y. July 6, 2018), *report and recommendation adopted*, 2018 WL 3998965 (E.D.N.Y. Aug. 20, 2018)); *see also Rudler v. Houslanger & Assocs., PLLC*, No. 18-CV-7068 (SFJ) (AYS), 2020 WL 473619, at *4 (E.D.N.Y. Jan. 29, 2020) (collecting cases).

The Court finds that Daniel Hurteau is entitled to a rate of $400 per hour rather than the extravagant rate of $905–$995 per hour.  This amount is in line with the prevailing rate for partners in this district, and accounts for his decades of legal experience but lack of expertise in the area of law involved in this case, as well as the limited complexity of this matter as observed by the Court throughout this proceeding, including trial.  *See e.g.*, *Torcivia*, 437 F. Supp. 3d at 252–53 (finding that hourly rate of $350 was appropriate for an attorney with twenty years of experience litigating a case of limited complexity with a three-day, "relatively straightforward" trial); *cf. Anderson v. County of Suffolk*, No. 09-CV-1913 (GRB), 2016 WL 1444594, at *4 (E.D.N.Y. Apr. 11, 2016) (holding that rate of $450 per hour was warranted for well-known civil rights attorney with almost 30 years of experience who is regarded as a leader in his field); *Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 262–63 (E.D.N.Y. 2014) (awarding $425 to partner with 33 years of experience who had handled hundreds of employment discrimination cases).

The Court finds that Bojnowski, whom the Court views as a senior associate in light of her fourteen years of law practice and trial experience, is entitled to a rate of $325 per hour.  This is in line with the prevailing rate for senior associates in the district and accounts for her lack of experience in this particular area of the law.  *See Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, & Labor Mgmt. Coop. Funds v. Cali Enters., Inc.*, No. 18-CV-3556 (JFB) (AYS), 2019 WL 2076784, at *5 (E.D.N.Y. May 10, 2019) ("Courts in this district have concluded that approximately $200 to $325 is a reasonable hourly rate for senior associates, and that $100 to $200

is a reasonable hourly rate for more junior associates." (citation omitted)); *Cleanup N. Brooklyn*, 373 F. Supp. 3d at 404–05 (awarding $325 hourly rate to a counsel with thirteen years of experience in commercial litigation).

As part of Plaintiffs' attorneys' fees requests, Plaintiffs' counsel includes an additional six attorneys and five legal professionals as timekeepers on this case.  (*See* Hurteau Decl., Dkt. 118-2, ¶ 10.)  These timekeepers are all listed with varying hourly rates, and altogether billed 174.4 hours.  (*See id.*)  Initially, Plaintiffs' counsel failed to provide any information regarding the experience of the other Nixon Peabody attorneys and staff that worked on the case.  (*See id.*)  In their Reply Memorandum,[3] Plaintiffs note "[t]he experience of each attorney who worked on the case is . . . reflected in the rate charged" (Pls.' Reply, Dkt. 122, at 6), and provided copies of the backgrounds of each attorney timekeeper (*see* Nixon Peabody Backgrounds, Dkt. 122-2; LinkedIn Resumes, Dkt. 122-3).  Upon review of this material, the Court declines to award this staff the rates requested in Plaintiffs' fee application, given the absence of any indication that they have experience or expertise in this area of the law.  The sole exception is Nixon Peabody partner Jason Gonzalez, who is a group leader of the firm's Data Privacy & Cybersecurity practice.  (*See* Nixon Peabody Backgrounds, Dkt. 122-2, at ECF[4] 5.)[5]   Except as to Gonzalez, the Court again applies the prevailing rates in this District as discussed *supra*, and sets the following rates: $400 for partner

---

[3] "The Court of Appeals for the Second Circuit accords district courts wide discretion in determining how to handle arguments first raised on reply submissions."  *Mango v. BuzzFeed, Inc.*, 397 F. Supp. 3d 368, 375 (S.D.N.Y. 2019) (citations omitted).

[4] Citations to ECF refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[5] Mr. Gonzalez focuses his practice on three primary areas: government investigations, prosecutions, and regulatory matters; commercial litigation; and data security and privacy.  (*Id.* at ECF 5–6.)

Adam Gilbert[6]; $300 for counsel Aaron Brian[7]; $250 for senior associate Jena Rotheim[8]; $200 for senior associate Jessica Walker[9]; and $150 for junior associate Paul Williamson.[10]  In light of Gonzalez's data privacy and cybersecurity expertise, the rate that will apply to his time is $450 per hour.

Plaintiffs also billed for the work of two paralegals, two eDiscovery specialists, and one research librarian at rates ranging from $230–$360.  (*See* Hurteau Decl., Dkt. 118-2, at 3.) Plaintiffs have not provided any information regarding the experience of these legal professionals in their filings, and thus have not met their burden to establish the requested hourly rates with satisfactory evidence. *See Andrews*, 2015 WL 5773961, at *4; *see also Rudler*, 2020 WL 473619, at *12 ("[W]here an applicant fails to provide background and experience information that would enable a court to assess the reasonableness of a requested rate, a court may use its discretion to award fees at a lower rate." (citation omitted)).  The Court finds that $100 per hour is a reasonable rate for this staff.  *See D'Annunzio v. Ayken, Inc.*, No. 11-CV-3303 (WFK) (WDW), 2015 WL

---

[6] Adam Gilbert is a partner at the New York office of Nixon Peabody and has been practicing law for 35 years, specializing in complex commercial litigation.  (*See* Nixon Peabody Backgrounds, Dkt. 122-2, at ECF 2.)

[7] Aaron Brian is of counsel at Nixon Peabody's Los Angeles office with twenty years of litigation experience, specializing in intellectual property litigation, entertainment and fashion law, and complex commercial litigation.  (*Id.* at ECF 13–14.)

[8] At the time of the litigation, Jena Rotheim had practiced law for sixteen years and was an associate at Nixon Peabody for eleven years, focusing on commercial litigation and alternative dispute resolution.  (LinkedIn Resumes, Dkt. 122-3, at ECF 2.)

[9] At the time of the litigation, Jessica Walker was practicing law for approximately seven years and was an associate at Nixon Peabody for three years, representing automotive and beverage manufacturers, pharmaceutical and laboratory companies, and technology companies.  (LinkedIn Resumes, Dkt. 122-3, at ECF 4.)

[10] At the time of the litigation, Paul Williamson had practiced law for approximately two years, all of which were at Nixon Peabody.  (LinkedIn Resumes, Dkt. 122-3, at ECF 6.)

5308094, at *4 (E.D.N.Y. Sept. 10, 2015) (finding $70 to $100 reasonable rate for paralegals); *see also Rudler*, 2020 WL 473619, at *12 (awarding an hourly rate of $90 for a paralegal); *Cleanup N. Brooklyn*, 373 F. Supp. 3d at 405 (awarding to a paralegal with less than one year of experience a rate of $70).

### B.    Hours Expended

"The party seeking attorney's fees also bears the burden of establishing that the number of hours for which compensation is sought is reasonable." *Torcivia*, 437 F. Supp. 3d at 253 (quoting *Anderson*, 2016 WL 1444594, at *5). "Courts are empowered to reduce claimed hours that are 'excessive, redundant or otherwise unnecessary.'" *Id.* (quoting *Cocuzza v. Rockland County*, No. 17-CV-8217 (KMK) (PED), 2019 WL 6498915, at *5 (S.D.N.Y. Nov. 7, 2019); *see also Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) ("We do not require that the court set forth item-by-item findings concerning what may be countless objections to individual billing items.") Plaintiffs' attorney submitted to the Court a copy of the bills reflecting attorney time and costs (Plaintiffs' Fee Bill ("Pls.' Bill"), Dkt. 118-3), and initially did not make any arguments or cite any case law to support the reasonableness of the number of hours for which compensation is sought (*see* Pls.' Memo, Dkt. 118-1; Hurteau Decl., Dkt. 118-2). Following the filing of Defendant's opposition to the hours claimed by Plaintiffs' counsel (Def. Opp., Dkt. 119, at 5), Plaintiffs proffered arguments regarding the reasonableness as to the claimed hours. The Court addresses each of Defendant's objections in turn and finds that a 5% reduction in the claimed number of hours for Gilbert, and a 15% percent reduction in the number of claimed hours for Hurteau, is warranted.

## 1.      Fees and Costs Related to David Resnik

Defendant argues that, "[i]n light of David Resnik's noncompliance with legitimate discovery requests, withdrawal from the case, and the Court's order granting [Defendant] the ability to seek fees and costs from him,[11] Plaintiffs are not entitled to recover any attorney fees or costs related to work performed on his behalf in this case." (Def. Opp., Dkt. 119, at 6.)  Defendant contends that Plaintiffs treat their attorneys' fees and expenses as if there was only one Plaintiff in this case in their motion papers and attachments, and "[t]hat distinction is important because [] Plaintiffs' recovery depends, in part, on the success of their own claims."  (*Id.* at 5 (citation omitted).)  The Court disagrees.

"[A] plaintiff's lack of success on some of his claims does not require the court to reduce the lodestar amount where the successful and the unsuccessful claims were interrelated and required essentially the same proof."  *Anderson*, 2016 WL 1444594, at *7 (quoting *Murphy v. Lynn*, 118 F.3d 938, 952 (2d Cir. 1997)).  Here, the successful and unsuccessful claims arose out of a common core of facts.  All claims by Plaintiffs stemmed from Defendant's installation of spyware on Plaintiff Anne Resnik's cell phone and the alleged interception of telephonic communications between Anne Resnik and all of the other Plaintiffs.  While Plaintiffs' attorney undoubtedly had to expend some additional time on David Resnik's claim, given the joint nature

---

[11] After David Resnik withdrew as Plaintiff from this case, Judge Gold stated: "Defendant may seek reimbursement from plaintiff David Resnik for fees and costs directly attributable exclusively to defendant against his claims." (Sept. 28, 2018 Minute Entry, Dkt. 61.)  Similarly, upon granting in part Defendant's second motion for sanctions against Plaintiff Elizabeth Resnik, Judge Gold issued the following order: "Defendant Coulson may seek fees and costs incurred solely in connection with his efforts to discover telephone records and related information with respect to Elizabeth Resnik's claims.  Counsel are urged to confer in an effort to resolve defendant's claim for these fees and costs."  (May 9, 2019 Order, Dkt. 87.)

of all filings prior to his withdrawal and the common core of facts, this time was negligible, and the Court declines to reduce the hours expended on this ground.

### 2.      Minimal Success

The Court also does not credit Defendant's argument that "Plaintiffs' recovery of attorney fees and costs expended on behalf of Elizabeth Resnik, Mary Palinski, and Dr. Herschkowitz should also be significantly limited given their minimal success." (Def. Opp., Dkt. 119, at 6.)  As proof of Plaintiffs' alleged "minimal success," Defendant points to the fact that the jury awarded "only $10,000" statutory damages to each of these three Plaintiffs.  (*Id.*)  However, an award of the statutory maximum under 18 U.S.C. § 2520(c)(2) hardly indicates an unsuccessful plaintiff. *See Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 542 (S.D.N.Y. 2008) ("A plaintiff may still be viewed as having obtained a significant and valuable level of success even if she did not achieve the precise result originally sought."  (internal quotation marks and citation omitted)).  Therefore, the Court will not reduce the hours expended on behalf of these Plaintiffs on this ground either.

### 3.      Block Billing and Vague Descriptions of Plaintiffs' Attorneys' Work

Defendant argues that the Court should impose a 10% reduction in Plaintiffs' attorneys' fees because Plaintiffs' counsel engages in a practice of block billing and submitting vague billing entries.  (Def. Opp., Dkt. 119, at 6–7.)  "Block billing is the aggregation of multiple tasks into a single billing entry," *Marchuk v. Faruqi & Faruqi LLP*, 104 F. Supp. 3d 363, 370 n.3 (S.D.N.Y. 2015) (citing *Wise v. Kelly*, 620 F. Supp. 2d 435, 450 (S.D.N.Y. 2008)), which "mak[es] it difficult for the Court to isolate areas of excess," *id.* at 370.  Block billing is not *per se* unreasonable if the court can still determine the reasonableness of the hours claimed.  *See Hines v. City of Albany*, 613 F. App'x 52, 55 (2d Cir. 2015) (summary order); *Adorno v. Port Auth. of N.Y. & N.J.*, 685 F. Supp. 2d 507, 515 (S.D.N.Y. 2010) ("While block-billing is disfavored and may lack the specificity

required for an award of attorneys' fees, it is not prohibited as long as the [c]ourt can determine the reasonableness of the work performed." (internal quotation marks and citation omitted)). "[T]he Court may also impose an across-the-board reduction for billing entries that are so vague as to prevent the Court from determining whether the hours billed were excessive." *Makinen v. City of New York*, No. 11-CV-7535 (ALC) (AJP), 2016 WL 1451543, at *5 (S.D.N.Y. Apr. 12, 2016); *accord Anderson*, 2016 WL 1444594, at *6 ("Courts have imposed reductions as high as 40% based solely on vague billing entries.") (collecting cases).

The Court has reviewed the billing and timekeeping notes submitted by Plaintiffs' counsel, and finds that, in most instances, Plaintiffs' attorneys did not engage in block billing such that the Court cannot determine the reasonableness of the work done in the time billed.  Generally, Plaintiffs' attorneys billed in relatively small increments of time of under an hour, and the nature of the work was discernible, making it possible to determine the reasonableness of the hours expended on each task.  *Cf. Makinen*, 2016 WL 1451543, at *6 (awarding a 10% across-the-board reduction where the court could not discern the amount of time spent on any individual activity or the subject matter of various communications from a vague entry billed for 8.3 hours); *see also Balu v. City of New York*, No. 12-CV-1071 (KPF), 2016 WL 884666, at *5 (S.D.N.Y. Mar. 8, 2016) ("[T]he law does not require counsel to 'record in great detail how each minute of their time was expended,' but only to 'identify the general subject matter of their time expenditures.'" (alterations omitted) (quoting *Hensley*, 461 U.S. at 437 n.12)).  Even where Plaintiffs' counsel aggregated multiple tasks into an individual description of services, the descriptions were mostly specific enough for the Court to evaluate whether the time spent on the combined tasks was reasonable.  (*See, e.g.*, 4/17/17 Entry Pls.' Bill, Dkt. 118-3, at ECF 10 (billing 2.90 hours to "Review complaint in detail.  Prepare for conference with client and conduct research on impact

of Fifth Amendment on document disclosure.  Participate in conference call with client team.

Confer with opposing counsel on Rule 26 and 16 review."); 8/29/17 Entry Pls.' Bill, Dkt. 118-3,

at ECF 26 (billing 5.50 hours for "Legal research regarding spoliation standard for adverse

inference in light of revisions to rule 37.  Draft motion for sanctions legal argument.").)

Though, in connection with the deposition and trial phases of this litigation, there were

more instances of block billing for which the tasks were not ideally detailed (*see, e.g.*, 9/14/19 and

9/15/19 Entries Pls.' Bill, Dkt. 118-3, at ECF 113 (Daniel Hurteau, for each of the two days before

trial, billing approximately 10 hours preparing for trial); 9/16/19, 9/17/19, 9/18/19, and 9/19/19

Entries Pls.' Bill, Dkt. 118-3, at ECF 113 (Daniel Hurteau billing between 12.70 and 13.70 hours

on each day of trial)), the Court finds that the number of hours claimed during these periods, given

the amount of work that would reasonably be expected during these stages of the case, does not

warrant a reduction in attorneys' fees.  The Court similarly finds that other time entries related to

the appearance of Plaintiffs' counsel in court,[12] though combining many tasks, are reasonable

---

[12] (*See* 4/25/17 Entry Pls.' Bill, Dkt. 118-3, at ECF 11 (billing 4.60 hours to "Travel to Brooklyn and attend Rule 16 conference.  Confer with opposing counsel on discovery issues and return to office from Brooklyn"); 6/14/17 Entry Pls.' Bill, Dkt. 118-3, at ECF 18 (billing 3.90 hours to "Travel to the SDNY and appear for the Rule 16 conference.  Travel back to office and prepare correspondence for client team on outcome of conference"); 9/28/2018 Entry Pls.' Bill, Dkt. 118-3, at ECF 73 (billing 4.70 hours to "Prepare for conference with court.  Travel to court and participate in conference with Judge Gold.  Return to office and follow up on issues raised by court"); 4/16/19 Entry Pls.' Bill, Dkt. 118-3, at ECF 95 (billing 4.90 hours to "Prepare for pre-trial.  Travel to EDNY from NYC office.  Participate in pre-trial conference with Court.  Discuss issues with opposing counsel.  Correspond with client on pre-tr[ia]l conference.  Correspond with expert on trial date.  Correspond with client team on outcome of conference"); 5/8/19 Entry Pls.' Bill, Dkt. 118-3, at ECF 98 (billing 5.40 hours to "Prepare for oral argument on motion to dismiss E. Resnik's claims.  Travel to EDNY and argue motion before Court.  Return to office and confer with E. Resnik"); 9/4/19 Entry Pls.' Bill, Dkt. 118-3, at ECF 111 (billing 8.40 hours to "Prepare for pre-trial conference with Judge Chen.  Attend and participate in [argument] on motions in limine.  Discuss issues for trial with B. King.  Follow up to send documents requested by Court").)

given the work normally associated with handling the identified matters, as well as the delays inherent in traveling anywhere in New York City.

### 4.    Vague Tasks Related to Divorce Action

Defendant argues that numerous entries throughout Plaintiffs' attorneys' invoice include vague entries related to the divorce action, and "do not appear to be work needed to be performed in this case," warranting reduction of the Plaintiffs' recoverable attorneys' fees.  (Def. Opp., Dkt. 119, at 7–8.)  The Court rejects this argument.  This litigation stems directly from the finding of Defendant's use of spyware in the matrimonial action in state court.  Thus, it is not only conceivable, but expected, that Plaintiffs' attorneys in the litigation before this Court would correspond with Anne Resnik's divorce attorneys regarding evidence and legal theories regarding the spyware and spoliation of evidence.  Furthermore, as the acrimonious state actions were proceeding in concert with this action, and involved the same parties, it is conceivable that the attorneys involved in the two actions might strategize to leverage one proceeding in settlement negotiations relating to the other.[13]  Therefore, the Court declines to award a fee reduction on these grounds.

### 5.    Excessive Billing

Defendants argue that Plaintiffs overstaffed this matter, specifically at the complaint stage of this litigation, which resulted in "five attorneys working on assessing the matter and drafting

---

[13] During a February 8, 2018 status conference, Judge Gold and the parties addressed the parties' goals in the present action in light of the matrimonial action, and discussed the potential of settlement given the intertwined nature of both cases.  (*See* Feb. 8, 2018 Status Conference Transcript, Dkt. 38, at 27:19–33:7.)  Ultimately, counsel reported that settlement was not possible during the course of discovery in this litigation.  (*See* Plaintiffs' Letter Regarding Settlement, Dkt. 48; Minute Entry, Apr. 24, 2018.)

and revising the Complaint." (Def. Opp., Dkt. 119, at 8–9 (record citation omitted).) The Court disagrees.

Although, as Plaintiffs concede, "[t]he allegations in [the] Complaint are primarily derived from . . . [the] Decisions and Orders of Justice Jeffery S. Sunshine, Supreme Court, Kings County, New York State" (Compl., Dkt. 1, ¶ 1), the resulting Complaint was thirty-six pages in length and involved an entirely different set of legal claims than were raised in the state court case, including claims under ECPA and the CFAA, and an assortment of state law claims. The process of drafting and reviewing such a complaint could easily be time-consuming, notwithstanding the established nature of the relevant facts. The Court therefore does not find the expenditure of a total of 82.7 hours of work by Plaintiffs' counsel (two partners and three associates) in writing, reviewing, and re-reviewing the Complaint,[14] to be unreasonable. (*See* Pls.' Bill, Dkt. 118-3, at ECF 1–9.)

### 6.   Duplicative Work

Defendant argues that duplicative work was performed by partners Hurteau and Gilbert. (Def. Opp., Dkt. 119, at 9–10.) "It is within the court's discretion [to] reduce the attorneys' fees

---

[14] Entries relating to the preparation of the Complaint include, for example: On January 18, 2017, Gonzalez billed 1.10 hours for reviewing and analyzing the draft complaint; on January 27, 2017, Walker spent 1.60 hours reviewing the draft complaint and researching related state law; on January 30, 2017, Walker reviewed and revised the draft complaint for 2.10 hours; on February 2, 2017, Hurteau reviewed the draft complaint and participated in a call to discuss changes to the draft for 1.80 hours; on February 3, 2017, Hurteau spent 3.60 hours reviewing and revising the complaint in detail and corresponding with the team about changes; on February 4, 2017, Hurteau spent 1.10 hours reviewing the latest draft of the complaint and conferring with the team about final changes; on the same day, Gonzalez spent 2.10 hours reviewing, analyzing, and revising the draft complaint; on February 5, 2017, five attorneys collectively spent 8.70 hours on a call discussing the complaint; and, finally, on February 6, 2017, Hurteau spent 7.80 hours reviewing, revising, and finalizing the complaint for filing. (*See* Pls.' Bill, Dkt. 118-3, at ECF 2–6.) Although, on their face, these entries may be viewed as demonstrating duplication of or wasted effort by multiple attorneys, the Court finds, based on its experience, that such repetitive review, editing, and redrafting is necessary to ensure a properly pled complaint, especially in a non-routine matter such as this.

sought 'where the prevailing party assigned an inordinate number of attorneys to litigate the action.'" *Reiter v. Maxi-Aids, Inc.*, No. 14-CV-3712 (SJF) (GRB), 2019 WL 1641306, at *5 (E.D.N.Y. Apr. 16, 2019) (quoting *Houston v. Cotter*, 234 F. Supp. 3d 392, 404 (E.D.N.Y. 2017)); *id.* at *6 (finding that a significant reduction in the number of hours billed was warranted where multiple attorneys were actively participating at every point of the case and duplicating work); *see also Lochren v. County of Suffolk*, 344 F. App'x 706, 709 (2d Cir. 2009) (summary order) (affirming "25% across-the-board reduction in fees because plaintiffs overstaffed the case, resulting in the needless duplication of work and retention of unnecessary personnel"); *Small v. N.Y.C. Transit Auth.*, No. 03-CV-2139 (SLT) (MDG), 2014 WL 1236619, at *13 (E.D.N.Y. Mar. 15, 2014) (finding that time billed for strategy sessions between attorneys was duplicative work). Courts reviewing a fee application involving multiple attorneys "should be particularly attentive to the risk of inefficiency and avoid making the defendant subsidize it." *Cruceta v. City of New York*, No. 10-CV-5059 (FB) (JO), 2012 WL 2885113, at *6 (E.D.N.Y. Feb. 7, 2012), *report and recommendation adopted*, 2012 WL 2884985 (E.D.N.Y. July 13, 2012). "In such circumstances, a court should 'compensate only that work which was necessary to the litigation and which constituted a cost efficient use of co-counsel and outside counsel.'" *Id.* (citation omitted).

Here, the Court agrees with Defendant that some of the work performed by both Hurteau and Gilbert was unnecessarily duplicative and thus warrants a reduction in fees. For example, within the course of four days, each partner spent over an hour reviewing the answer to the Complaint and corresponding with each other and the attorneys from the matrimonial action about it. (*See* 4/13/17–4/17/17 Entries Pls.' Bill, Dkt. 118-3, at ECF 10.) Then, Hurteau spent some portion of 2.90 hours reviewing the Complaint "in detail," despite spending many hours working on its drafting in the first instance. (*Id.*) Additionally, from June 1 to 14, 2017, both partners

individually spent several hours reviewing the same orders and reports deriving from the matrimonial action, and discussed the same with each other and the divorce attorneys. (*See* 6/1/17–6/14/17 Entries Pls.' Bill, Dkt. 118-3, at ECF 17–18.)

Plaintiffs defend this "symbiotic utilization of co-counsel" by asking the Court to treat the collaborative work here the same as was approved in *United States ex rel. Coughlin v. International Business Machines Corp.*, 992 F. Supp. 137 (N.D.N.Y. 1998). (Pls.' Reply, Dkt. 122, at 10–11.) However, that case is distinguishable because the court there found that, "[i]n light of the complex nature of [the] case, the [c]ourt cannot conclude that the use of multiple attorneys was unnecessary or extravagant." *Coughlin*, 992 F. Supp. at 145.[15]   In contrast, the Court does not find this case to be so complex as to require work by two partners on the same tasks at the beginning of the litigation, especially when there was also collaboration on strategy with the attorneys from the matrimonial proceeding.

### 7.    Partners Performing Associate or Paralegal Work

Defendant argues that, in certain instances, Hurteau performed work that an associate could have performed at a lower hourly rate, and thus requests that the recoverable rate for that work should be reduced to that of an associate. (*See* Def. Opp., Dkt. 119, at 11–12.)  The Court finds that the general partner-heavy staffing of the case, and the misappropriation of associate-level discovery and document review work to partners, warrants a reduction in the hours awarded.

"[L]opsidedly partner-heavy bills are quite unusual in the context of litigation work," where "[i]t is common, particularly with respect to discovery and other pretrial tasks, that

---

[15]  *Couglin* involved a settlement agreement after a former receiving inspector at a government contractor's manufacturing facility alleged, under the False Claims Act, that a contractor and subcontractor failed to test computer components manufactured for military aircraft and submarines.  *See* 992 F. Supp. at 139.

associates shoulder much of the work, under the active supervision of partners, and that partners take lead roles as to projects for which their expertise adds value." *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 51 (S.D.N.Y. 2015).  In this case, the firm billed approximately 1.6 times as many partner hours as associate hours: 413.5 hours were billed by three partners, whereas 257.7 hours were billed by one attorney of counsel and four associates.  (*See* Hurteau Decl., Dkt. 118-2, at 3.)  Work on this case was narrowed down to Hurteau and Bojnowski beginning in October 2, 2017, from which point a review of the invoices reflects approximately equal work between partner and associate.  (*See* Pls.' Bill, Dkt. 118-3, at ECF 34.)

The following could have been delegated to Nixon Peabody associates: (1) preparing and reviewing discovery disclosures (*see* 6/28/17–7/14/17 Entries, Pls.' Bill, Dkt. 118-3, at ECF 18–22); (2) document review (*see* 8/17/17, 8/18/17, and 8/28/17 Entries, Pls.' Bill, Dkt. 118-3, at ECF 26); and (3) reviewing arguments and decisions from the matrimonial action (*see* 9/12/17 and 9/18/17, Pls.' Bill, Dkt. 118-3, at ECF 31).  *See Kizer v. Abercrombie & Fitch Co.*, No. 12-CV-5387 (JS) (AKT), 2017 WL 9512408, at *4 (E.D.N.Y. July 24, 2017) (questioning the performance of tasks by a partner which could have been performed by a less experienced counsel), *report and recommendation adopted*, 2017 WL 3411952 (E.D.N.Y. Aug. 9, 2017); *United States ex rel. Bisk v. Westchester Med. Ctr.*, No. 06-CV-15296 (LAK) (FM), 2016 WL 8254797, at *5 (S.D.N.Y. Aug. 5, 2016) (reducing the hourly rate for time spent by senior attorneys conducting document review which could have been completed by less experienced, lower cost attorneys).  "[T]here is ample authority in this District, applying the standard of objective reasonableness, for reducing a fee award where the legal hours recorded by plaintiffs' counsel fell unusually heavily on partners with high hourly rates." *Beastie Boys*, 112 F. Supp. 3d at 53 (collecting cases).  The Court finds that such circumstances exist in this case, thus warranting a fee reduction.

### 8.    Unnecessary Work Due to Discovery Violations

Defendant alleges that "a vast amount of Nixon Peabody's work was dedicated to the Plaintiffs' inexcusable failure to comply with [Defendant's] legitimate and straight-forward discovery demands." (Def. Opp., Dkt. 119, at 13.)  Defendant is referring to the work done by Plaintiffs' attorneys in resisting Defendant's discovery requests seeking Plaintiffs' phone records. (*See* Dec. 26, 2017 Order; Feb. 8, 2018 Minute Entry, Dkt. 36; Defendant's Sanctions Cross Motion, Dkt. 42; Plaintiffs' Discovery Status Report, Dkt. 53; Defendant's Sanctions Letter, Dkt. 54; June 29, 2018 Order; Defendant's Cross-Motion Status Report, Dkt. 55; Sept. 28, 2018 Minute Entry, Dkt. 61; Jan. 4, 2019 Order; Defendant's Second Sanctions Motion, Dkt. 72; May 9, 2019 Minute Order, Dkt. 87.)  Although Plaintiffs did initially fail to respond to Defendant's requests and the Court's orders to produce phone records, Judge Gold did not grant Defendant's motion for sanctions as to Plaintiff Elizabeth Resnik.  (*See* May 9, 2019 Minute Order, Dkt. 87.)  Informed by Judge Gold's ruling, the Court rejects Defendant's characterization of the work done by Plaintiffs' counsel as "unnecessary," and instead views it as part of Plaintiffs' strategic defense in this case. *Cf. Small*, 2014 WL 1236619, at *9 (finding that "it would be unreasonable to impose fees on defendant for the time plaintiffs spent opposing defendant's discovery motions, especially since plaintiffs were found not to have acted in good faith" (citations omitted)).

Additionally, the Court provided an opportunity for Defendant to recover for the work done in pursuit of his discovery requests, which Defendant has seemingly failed to take advantage of. During the course of litigation, Judge Gold noted that Defendant may seek "reimbursement . . . for fees and costs directly attributable exclusively to [D]efendant against [David Resnik's] claims" after David Resnik withdrew as a Plaintiff (Sept. 28, 2018 Minute Entry), and that Defendant may "seek fees and costs incurred solely in connection with his efforts to discover telephone records

21

and related information with respect to Elizabeth Resnik's claims" (May 9, 2019 Minute Order).
Defendant's remedy for having to litigate certain discovery requests was to seek fees and costs on
his own, which he has not done and as to which the time has passed.  The Court declines to reduce
Plaintiffs' attorneys' fees award on this basis.

### 9.      Bad Faith in Settlement Negotiations

Defendant alleges that Plaintiff Anne Resnik displayed bad faith in settlement negotiations
by conditioning settlement in this case on Defendant consenting to her proposed child custody
terms in the state court proceeding.  (*See* Def. Opp., Dkt. 119, at 19–21.)  "[T]he Second Circuit
has held that 'absent a showing of bad faith, a party's declining settlement offers should not operate
to reduce an appropriate fee award.'"  *Siracuse v. Program for the Dev. of Hum. Potential*, No.
07-CV-2205 (CLP), 2012 WL 1624291, at *20 (E.D.N.Y. Apr. 30, 2012) (alterations omitted)
(quoting *Ortiz v. Regan*, 980 F.2d 138, 141 (2d Cir. 1992)).   Aside from making yet another
attempt to malign Anne Resnik's character, for which the Court has repeatedly admonished
Defendant throughout the course of these proceedings, Defendant fails to offer any evidence or
case law for his conclusory proposition that Plaintiff Anne Resnick's attempt at global settlement
was undertaken in bad faith.  Therefore, the Court denies Defendant's request to reduce Plaintiffs'
attorneys' fees on this ground.

### 10.      Defendant's Strained Financial Circumstances

Defendant argues that the Court should take into account the "vast disparity in wealth"
between himself and Plaintiffs Anne and Elizabeth Resnik.  (Def. Opp., Dkt. 119, at 21.)  Although
"the court may take into account the relative wealth of the parties," *Cohen v. W. Haven Bd. of
Police Comm'rs*, 638 F.2d 496, 505 (2d Cir. 1980) (citing *Faraci v. Hickey-Freeman Co.*, 607
F.2d 1025 (2d Cir. 1979)), the court declines to "focus exclusively on the financial condition of

one party unless that party appear[s] to be in extremis" *id.* at 506.  Furthermore, "[s]ince *Faraci,* courts in this Circuit have considered the parties' relative wealth almost exclusively when awarding fees against plaintiffs who bring frivolous or sanctionable claims." *Crews v. County of Nassau*, No. 06-CV-2610 (JFB) (GRB), 2019 WL 6894469, at *12 (E.D.N.Y. Dec. 18, 2019) (collecting cases).  Defendant has not provided any credible evidence regarding the financial status of himself or any Plaintiffs.  Even if there is a disparity in financial status, Defendant has certainly failed to show that he is impoverished to the point of "*in extremis.*"  The Court declines to credit nebulous claims of financial disparity between the parties as a reason to further reduce attorneys' fees.

### C.      Lodestar Amount

In light of all of the factors discussed *supra*, in addition to the Court's experience with the attorneys and claims in this case, the Court finds that a reduction in the number of hours claimed by Attorneys Gilbert and Hurteau is warranted—specifically, the Court reduces the number of hours claimed by Gilbert by 5% and by Hurteau by 15%.  *See Cleanup N. Brooklyn*, 373 F. Supp. 3d at 407 ("[I]n reviewing a fee application, 'trial courts . . . may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.'" (quoting *Fox*, 563 U.S. at 838)) (making a 30% across-the-board reduction to account for excessive hours of work requested); *Anderson*, 2016 WL 1444594, at *7–8 (applying a 33% across-the-board reduction of hours claimed by plaintiff's counsel to account for vagueness, excessive billing, and limited success).  This percentage reduction of hours is to account for duplicative work and for partners performing the work of an associate or paralegal.

The following table summarizes the reasonable hours award:

| Timekeeper | Requested Hours | Requested Rate | Approved Hours | Approved Rate | Total |
|---|---|---|---|---|---|
| A. Gilbert | 30.30 | $965 – $1,045 | 28.79 | $400 | $11,516 |
| D. Hurteau | 376.40 | $905 – $995 | 319.94 | $400 | $127,976 |
| J. Gonzalez | 6.80 | $755 | 6.80 | $450 | $3,060 |
| A. Brian | 34.10 | $635 – $705 | 34.10 | $300 | $10,230 |
| L. Bojnowski | 189.2077 | $635 – $745 | 189.20 | $325 | $61,490 |
| J. Rotheim | 17.40 | $715 | 17.40 | $250 | $4,350 |
| J. Walker | 5.60 | $595 | 5.60 | $200 | $1,120 |
| P. Williamson | 11.40 | $435 | 11.40 | $150 | $1,710 |
| K. Dayer | 46.00 | $330 – $360 | 46.00 | $100 | $4,600 |
| P. Dirmyer | 7.70 | $320 | 7.70 | $100 | $770 |
| J. Jarrett | 1.00 | $340 | 1.00 | $100 | $100 |
| A. Vescova | 12.50 | $230 | 12.50 | $100 | $1,250 |
| M. Harasymiw | 1.60 | $360 | 1.60 | $100 | $160 |

This amounts to an attorneys' fees award totaling $228,332.

## III.    Costs and Expert Fees

Plaintiffs request that the Court award costs in the amount of $18,965.17 and $56,470.29 in expert fees.  (Pls.' Fees Mot., Dkt. 118, ¶ 3.)  "The fee applicant bears the burden of adequately documenting and itemizing the costs requested."  *Volpe v. Nassau County*, No. 12-CV-2416 (JFB) (AKT), 2016 WL 6238525, at *10 (E.D.N.Y. Oct. 24, 2016) (citation omitted).  "Nonetheless, a court may take judicial notice of the payment of a filing fee and, therefore, award that cost."  *Rudler*, 2020 WL 473619, at *12 (citation omitted).

Defendant has not provided any documentation or itemization regarding the $18,965.17 in costs requested. Therefore, the Court declines to award these costs, with the exception of the filing fee payments of which it takes judicial notice. This amounts to $550 for the following: $400 for the complaint filing fee (*see* Compl., Dkt. 1), and $150 for Leave to Appear *pro hac vice* (*see* Motion for Leave to Appear *Pro Hac Vice*, Dkt. 13; Feb. 27, 2017 Order).

Regarding the fees claimed for the work done by Yalkin Demirkaya, Plaintiffs' testifying expert, Plaintiffs explain that their request does not reflect or include any amounts billed in the state court matrimonial action. (Hurteau Decl., Dkt. 118-2, ¶ 13.) Demirkaya's hourly rate is $325, and his total fees billed are $56,470.29. (*Id.*; CyberDiligence Invoice, Dkt. 118-4.) Plaintiffs have not provided any information regarding Demirkaya's experience to assist the Court in determining whether this hourly rate is reasonable. *See Indep. Project, Inc. v. Ventresca Bros. Constr. Co.*, 397 F. Supp. 3d 482, 500–02 (S.D.N.Y. 2019) (examining the reasonableness of an expert fee request in the context of that expert's experience).[16] "When the reasonableness of an expert's fees is not fully explained, the Court may exercise its discretion to determine a reasonable fee." *Penberg v. HealthBridge Mgmt.*, No. 08-CV-1534 (CLP), 2011 WL 1100103, at *15 (E.D.N.Y. Mar. 22, 2011) (collecting cases). Courts consider the following factors in determining the reasonableness of an expert witness's fees:

> (1) the witness's area of expertise; (2) the education and training that is required to provide the expert insight that is sought; (3) the prevailing rates for other comparably respected available experts; (4) the nature, quality and complexity of the discovery responses provided; (5) the cost of living in the particular geographical area; (6) any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26; (7) the fee being charged by the expert to the party who retained him; and (8) fees traditionally charged by the expert on related matters.

---

[16] Although Demirkaya summarized his experience and expertise during his trial testimony, Plaintiffs have not included that testimony in support of their fee application, and the Court is not obligated to hunt for that information in the record.

*Korabik v. Arcelormittal Plate LLC*, 310 F.R.D. 205, 206 (E.D.N.Y. 2015) (citations omitted). Again, because Plaintiffs have provided absolutely no information aside from the expert invoice, the Court cannot weigh these factors in determining the reasonableness of the hourly rate requested by this expert.  The Court also observed the expert's testimony and notes that much of his work was done in preparation for the divorce proceedings, and not in anticipation of the litigation before it.  The Court further notes that the expert's trial testimony ultimately involved very little actual expertise; rather, Demirkaya's conclusion that Defendant likely had wiped his computers of relevant electronic data was simply based on evidence showing that Defendant had purchased a data wiping program shortly before a forensic examination conducted in connection with the matrimonial proceedings.  (*See generally* Redacted Testimony of Yalkin Demirkaya, Dkt. 116.)

Therefore, the Court will apply a one-third reduction of the total amount billed, reducing the $56,470.29 requested to an award of $37,646.86 in expert fees.  *See Indep. Project*, 397 F. Supp. 3d at 501 (reducing expert fee award by 15% and collecting cases).

## CONCLUSION

For the reasons contained herein, Plaintiffs' motion for attorneys' fees and costs is granted in part.  The Court awards $228,332 in attorneys' fees, $550 in costs, and $37,646.86 in expert fees, for a total of $266,528.86.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 28, 2020
        Brooklyn, New York